## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### JACK C. SHARPE, ET AL. v. QUINTON K. TALLEY, EXECUTOR, ETC., ET AL.

March 10, 1975.

Record No. 740250.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*S. W. Tucker (Oliver W. Hill; Hill, Tucker & Marsh,* on brief) for plaintiffs in error.

*Buford M. Parsons, Jr. (May, Garrett, Miller & Parsons,* on brief), for defendants in error.

Harrison, J., delivered the opinion of the court.

Jack C. Sharpe and Willette D. Sharpe, husband and wife, sought to recover a judgment against the defendants, Charles O. Talley and Douglas W. Conner, beneficiary and trustee,

respectively, in a deed of trust in which the plaintiffs were grantors. They claim to have been deprived of property without due process of law through unlawful procedures and contrary to constitutional guaranties. Their motion for judgment alleges that in foreclosing the deed of trust the defendants failed to comply with its terms and the statutes of Virginia, and that the defendant Talley fraudulently acquired plaintiffs' property and has been unjustly enriched. Defendants demurred and filed grounds of defense. Talley filed a counterclaim against the plaintiffs, to which the plaintiffs filed their grounds of defense. The demurrer was sustained by the court below and plaintiffs appealed.

On April 2, 1969, the plaintiffs conveyed to Malcomb O. Perkins and Douglas W. Conner, trustees, property in Richmond, described as 718 Rex Avenue, in trust to secure a note for $13,500, with $6^3/_4$% interest, repayable in monthly installments of $93.28, commencing April 10, 1969. The pertinent provisions of the deed of trust are the following:

"This deed is to be governed by and is to be read and construed with reference to Sections 55-59 and 55-60 of the Code of Virginia of 1950, as now in force, including the following provisions:

"A. Subject to all (call) upon default.

\* \* \*

"F. Advertisement required: After first advertising the time, place and terms of sale for five times, which need not be successive, in some newspaper having general circulation in the City or County in which the property is located, the last of which may appear on the day of sale."

On March 22, 1973, the defendant Talley wrote Jack Sharpe that his last check had been returned because of insufficient funds and that another payment was due on March 23rd. In this letter Talley also said:

"As you have not paid enough to take care of the checks last year we wish to advise you that unless you take care of this by March 23 will be necessary for us to sell the house and close it out. You have a good house, and you need it, and we would hate to sell it, but you will have to catch up the payments and keep them up if you want to keep the house."

Plaintiffs allege that thereafter and preliminary to refinancing their indebtedness and paying Talley in full, they inquired of him as to the exact balance they owed on their loan. Talley's bookkeeper, Mrs. Opal VanAllen, responded on March 30, 1973, as follows:

"Mr. Talley asked me to write you and give you a statement of the number of payments due on your account.

"Each of the three $200 checks which you gave us was credited as two payments, the difference going to interest. You will recall that two of these checks came back because of insufficient funds; only one was made good, so actually they took care of only four payments which were July, August, September and October.

"The check which you gave us in February was credited to November. You made two payments in March (one of which was returned and has been redeposited). Assuming that this check clears the bank, you will be paid through January. If it does not, then you will have only paid through December.

"As you must realize, it is very difficult to keep these records straight when it is necessary to charge back so many returned checks, however, if you have any questions, call me at 266-4740 between 9:30 and 4:00 and I will be glad to help you."

Plaintiffs represent that on or about April 6, 1973, they sent Talley a check for $97.28 to be applied on the note, and received no word from Talley that this tender of payment would not be accepted.

The next communication regarding the debt was a letter, dated April 18, 1973, to the Sharpes from Sherman B. Lubman, attorney for Talley. The letter advised plaintiffs that their deed of trust had been foreclosed by the trustee and their property had been sold to Talley on April 12, 1973. The Sharpes were requested to vacate the premises and surrender possession thereof immediately.

It developed that Douglas W. Conner, trustee, after having advertised for sale "718 Rex Avenue, Richmond, Virginia" in the April 8, 9, 10, 11 and 12 issues of the Richmond Times-Dispatch, sold the property at 9 a. m. on April 12, 1973, in the auditorium of the Richmond Board of Realtors to Charles O. Talley for $12,500, this amount being less than the debt due him by the Sharpes.

It further appears from the pleadings that:

The property involved was plaintiffs' residence which they purchased from Talley. The record does not reflect the cash amount the Sharpes paid Talley at the time of purchase. It does reflect that the Sharpes made 46 monthly payments totaling $4,290.88 to Talley between April, 1969, and the date of sale. Talley claimed that on April 11, 1973, the balance due him was $12,636.94 unpaid principal and $143.54 interest accrued, a total of $12,780.48.

On April 8, 1973, the first day the trustee's advertisement appeared in the Richmond Times-Dispatch, only one payment of $93.28 was past due and payable on the Sharpe loan.

Plaintiffs allege that they were never advised or given notice that their loan had been declared in default and immediately due and payable or that the deed of trust was being foreclosed. They further say that they did not see the newspaper advertisement; had no notice or knowledge of the proposed sale; and had no knowledge that the property had been sold until after the sale had occurred.

By deed dated June 29, 1973, Talley resold the property to a bona fide purchaser for $20,500, this amount being $8,000 greater than Talley's purchase price and $7,719.52 greater than the debt due by the Sharpes. In his counterclaim Talley seeks to recover from plaintiffs a deficiency judgment for $1,156.68.

Defendants say that they were under no legal duty to inform the debtor plaintiffs of the balance due on their indebtedness. They further say that they were under no legal duty to give the Sharpes actual notice that their debt was being declared immediately due and payable, and of their intent to foreclose, or to give them any actual notice of the foreclosure proceedings. They rely on Subsection (6) of Virginia Code § 55-59, which provided, prior to a 1973 amendment, that: "No notice to the grantor or his successor in title shall be required unless required by the deed of trust." [1] In effect, the position of the defendants is that they owed plaintiffs no duty other than to advertise the

---

[1] This provision of the Code has since been deleted and Code § 55-59 was amended in 1973 to require the trustee and parties secured to give written notice of a proposed sale under any deed of trust by personal delivery or by certified or registered mail to the present owner of the property, at his last known address, as such owner and address appear on the records of the parties secured.

time, terms and place of a proposed sale of their property for five times in a Richmond newspaper.

■ The Sharpes allege that they have been deprived of their property and the defendant Talley has been unjustly enriched as the result of the alleged unlawful, fraudulent and unconstitutional acts of the defendants. It is not necessary that we reach the constitutional issues raised by plaintiffs. They seek from the court the type of relief which was accorded the aggrieved parties in *Rohrer* v. *Strickland*, 116 Va. 755, 82 S. E. 711 (1914), and *Linney* v. *Normoyle*, 145 Va. 589, 134 S. E. 554 (1926). In these cases, decided upon non-constitutional grounds, there were foreclosure sales following default, and allegations were made of improper and inequitable conduct by the trustee and the beneficiary. In each case the property was sold under the deed of trust for an amount less than the secured debt, and subsequently resold by the beneficiary at an advanced price to a bona fide purchaser. A recovery was permitted in each case by the owner of the property for its fair value after deducting the amount due on the deed of trust debt. It is significant that in each of these cases the court held that the unconscionability of the transaction so fully appeared from the summary of undisputed facts that no other elaboration or comment was necessary.

■ Plaintiffs reserved the right to anticipate the payment of their note to Talley, and they had a right to inquire of him the exact amount they owed. It is clear from an exhibit that the information was not provided them, although it was peculiarly within the knowledge of Talley. The note signed by the Sharpes contains a provision that "[i]n the event any installment is not paid within 15 days from its due date, the undersigned agrees to pay in addition to such installment a maximum late charge of 4% of the amount of such installment in arrears, or a minimum of $1". The Sharpes would have no knowledge of the amounts charged them by Talley on account of "late charges" of "installments in arrears".

The defendants' reliance upon Code § 55-59 (6), in effect in 1969, is misplaced. The section referred to notice of a trustee's sale. We are primarily concerned here with a noteholder's duty to apprise the makers of the note of the fact that by reason of their default the holder had accelerated the payment of their

debt, principal and interest, and had declared their entire debt due and payable.

In *Florance* v. *Friedlander*, 209 Va. 520, 523, 165 S. E. 2d 388, 390 (1969), we considered whether a noteholder had "exercised timely and effectively the option under the note and deed of trust to accelerate maturity of the indebtedness". The controversy grew out of the debtor's alleged failure to make an interest payment on its due date and prior to receipt of notice of acceleration from the noteholder. We found that the notice of acceleration and the check for interest due were both received on the same day and that the record did not show which actually arrived first. We held that there had been no default, and we enjoined a foreclosure. In the course of our opinion, and pertinent to the instant case, we said:

> "It is essential for a valid exercise of an option to accelerate the maturity of a note that the noteholder do some positive act to indicate that the option has been exercised. This may be accomplished by notice to the maker, or some overt, unequivocal act calculated to apprise the maker effectively of the fact that the option has been exercised. In the case at bar the noteholder chose the method of written notice. While such notice is not a condition precedent to an effective exercise of the option, if it is the only method resorted to, to be complete and effective it must reach the maker. 5 A. L. R. 2d § 4, pp. 972, 973 and cases there cited." 209 Va. at 523, 165 S. E. 2d at 391.

*See also* 55 Am. Jur. 2d, Mortgages, § 386, p. 431; 59 C. J. S., Mortgages, § 495 (5) (e), p. 793.

In Annot., 5 A. L. R. 2d 968, 970 (1949), it is said:

> "It appears to be well settled that a provision in a bill or note accelerating the maturity thereof on nonpayment of interest or instalments, or other default, at the option of the holder, requires some affirmative action on the part of the holder, evidencing his election to take advantage of the accelerating provision, and that until such action has been taken the provision has no operation. In other words, some positive action on the part of the holder is an essential condition for the exercise of his option and a mere mental intention to declare the full amount due is not sufficient."

It was held in *Carmichael* v. *Rice*, 49 N. M. 114, 158 P. 2d 290 (1945), that the addition of the words "without demand or notice" does not alter the requirement of an affirmative act of the holder of the note for the valid exercise of the option to accelerate.

The deed of trust executed by the Sharpes included a paragraph reading: "A. Subject to all *(call)* upon default." (Emphasis added) This insertion of the explicatory word "call" had the effect of varying the language of Code § 55-60 (4) which reads, in part, *"subject to all upon default"*. In Black's Law Dictionary, 256 (4th ed. 1951), "call" is defined as follows: "As used in contract, means demand for payment of, especially by formal notice. *Keyes* v. *Kimmel,* 9 N. J. Misc. R. 604, 155 A. 19, 20."

While written notice may not be the only means available to a noteholder of informing a maker that the holder's option to accelerate had been exercised, this was the method to which Talley resorted. We have only to determine if the notice that he gave was complete and effective.

From time to time the Sharpes had been delinquent in meeting the monthly payments due Talley, and on occasion had given Talley checks which were returned because of insufficient funds. This unsatisfactory payment record could have prompted Talley to write Sharpe the letter of March 22, 1973. Talley points to this letter as an "affirmative defense" to plaintiffs' allegation that they were never informed by Talley that he had exercised his option to accelerate the payment of their debt. Talley says in his grounds of defense that this letter made the plaintiffs "aware of the arrears at the time in question", and made them "aware of the possibility of foreclosure".

We do not consider the letter of March 22nd sufficient notice to the Sharpes that the payment of their debt had been accelerated and that the deed of trust would be foreclosed. The letter was a conditional threat to sell Sharpe's property unless he caught up the payments and kept them up. Specifically, the letter threatened a sale unless Sharpe paid the checks given Talley during the previous year. It read in part: "As you have not paid enough to take care of the *checks last year* we wish to advise you that *unless* you *take care of this* by March 23 will be necessary for us to sell the house and close it out." (Emphasis added)

Sharpe alleges that upon receipt of this letter he requested from Talley the exact balance due on his loan. Talley's agent, in her response of March 30, 1973, failed to give the plaintiffs this information. In the letter Talley made no demand for full payment of the loan and no mention was made that Talley had accelerated the payment thereof. The letter was silent as to any foreclosure of the deed of trust. Further, the letter revealed that the Sharpes had by then made all 1972 payments and that Talley's office had received a check from Sharpe covering payments due through January, 1973. It therefore appears that upon receipt of the March 22nd letter the Sharpes did what was necessary to satisfy Talley's demands and to remove the threat of foreclosure.

Under the provisions of the note and the deed of trust, default by the Sharpes in the payment of any monthly installment due on the note entitled Talley, *at his option*, to *call* for and demand the immediate payment of the entire debt, principal and interest. Had he properly exercised his option to accelerate, Talley could then have required a foreclosure of the deed of trust. Talley relies upon his letter of March 22, 1973, as a positive act to indicate that he had exercised his option to accelerate the maturity of the Sharpe note. We hold that the method to which he resorted was neither complete nor effective. The letter was no more than a conditional threat that the Sharpes could lose their property by reason of the unsatisfactory manner in which they were making payments. It was not sufficient as a notice of acceleration.

The allegations of the motion for judgment, pertinent to the issue which we hold to be dispositive, are essentially conceded in the grounds of defense or are established by unquestioned exhibits.

Talley's request of the trustee to foreclose the Sharpe deed of trust was both precipitate and premature. The record shows that he never lawfully exercised his option to accelerate payment of the debt that plaintiffs owed him, an essential prerequisite to foreclosure. His actions resulted in a sale of plaintiffs' residence, Talley's unjust enrichment and the loss sustained by plaintiffs. Talley never granted the plaintiffs an opportunity to protect themselves from the penalties incident to acceleration.

We hold, however, the demurrer was properly sustained as to the trustee, Conner. It is conceded that the trustee

complied with the provisions of the deed of trust in advertising the property, and it does appear that the statute, as it existed at the time of sale, did not require actual notice of sale to the property owners. More importantly, plaintiffs are not seeking to set aside the trustee's sale, the deed from the trustee to Talley, or the deed from Talley to the bona fide purchaser. They seek only to recover $7,719.52, the difference between the $12,780.48 they owed Talley on April 11, 1973, and the $20,500.00 Talley realized from a resale of their property.

The judgment of the lower court sustaining the demurrer of the defendant, Douglas W. Conner, is affirmed. The judgment of the lower court sustaining the demurrer of the defendant, C. O. Talley, is reversed. The case will be remanded and reinstated on the docket of the court below for such further action as the parties may be advised, not inconsistent with the views expressed in this opinion.

*Affirmed in part; reversed in part; and remanded.*