## CIRCUIT COURT OF CAMPBELL COUNTY

Central Fidelity Bank, Successor
to Fidelity American Bank

v.

Charles D. Lawson,
Juanita Fisk Lawson,
and Ralph E. Lawson

June 11, 1982

By JUDGE J. SAMUEL JOHNSTON, JR.

The applicable law governing this transaction and case is found in the Uniform Commercial Code (U.C.C.). Article 3 of the U.C.C. was enacted into law effective January 1, 1966, in Virginia and is codified at Virginia Code § 8.3-101, *et seq.* (1965 Added Vol.). The note at issue is, in my opinion, a negotiable instrument. Virginia Code § 8.3-104(1) and § 8.3-104(2)(d). It is not rendered conditional, and thusly non-negotiable, by an acceleration clause or reference to acceleration terms in a deed of trust. See Virginia Code § 8.3-109(1)(c), Official Comment 4; and § 8.3-105(1)(c). This principle is confirmed in Official Comment 3 to Virginia Code § 8.3-105. A notation on the face of an instrument that payment is secured by a deed of trust does not impair, in and of itself, negotiability. Virginia Code § 8.3-105(1)(c). While I find that Article 3 of the U.C.C. controls here, it seems clear that the provisions of Article 9 (secured transactions) do not [control] in the instant case, since the security interest here is in realty and not personalty. See *Capital Investors Co. v. Executors of Estate of Morrison*, 484 F.2d 1157 (4th Cir. 1973), *cert. denied*, 440

U.S. 981 (1979). While Article 9 does control transfers of "realty paper", the provisions of § 8.9-104(j) removes this case from Article 9 coverage. For an interesting discussion of Article 9's application to transfer of "realty paper", see Note, "Security Interests in Notes and Mortgages: Determining the Applicable Law," 79 *Colum. L. Rev.* 1414 (1979).

Having decided that Article 3 of the U.C.C. governs, there are two issues which must be addressed in order to decide this case.

(1) Could the holder of the note accelerate the maturity of the debt, and, if so, must notice be given to the defendant, Ralph E. Lawson?

(2) Assuming notice to an endorser was required by the terms of the instrument or by law, may notice be waived and, in fact, was it waived?

Re inquiry (1), both the note and deed of trust provide for acceleration upon default with paragraph 18 of the deed of trust setting forth the steps necessary for acceleration. Prior to acceleration, the holder must give notice to the *maker* that (1) a default exists, (2) what must be done to cure the default, (3) that the maker has 30 days (or more) to cure the default, and (4) failure to cure the default may result in acceleration of the debt. In the case at hand, the endorser, Ralph Lawson, argues that notice to him is a condition precedent to his liability. Article 3 does require notice of dishonor as a condition precedent to an endorser's liability. Of course, there is a difference between notice of default and notice of acceleration. While the case is not on point with the instant one, our Supreme Court in *Florance v. Friedlander*, 209 Va. 520, 165 S.E.2d 520 (1969), discusses the requisites of a valid exercise of an acceleration option.

In *Kixx, Inc. v. Stallion Music, Inc.*, 610 P.2d 1385 (Utah 1980), the Supreme Court of Utah held that acceleration is not self-executing upon default. In the case at issue here, the permissive language of paragraph (18) of the deed of trust permits acceleration but does not require notice of it. There can be no doubt, however, of the absolute requirements of notice of default to the "Borrower." The case of *Sharpe v. Talley*, 215 Va. 615, 212 S.E.2d 273 (1975), discusses the requirements for acceleration between a holder and a maker. The result of that case did not consider the effect of an improper

acceleration upon an endorser's liability on a note but seemed to give to the makers the equitable remedy of unjust enrichment. The actions of the noteholder in *Sharpe* results in the sale of the property and deprived the maker of the opportunity to protect himself from the penalties incident to acceleration, the same result occurring in the instant case between noteholder and endorser. Thus, the status of the endorser and the issue of waiver necessarily require attention.

I could find no Virginia case which addressed the effect of waiver on an acceleration clause as in the case at issue. The Supreme Court in *Florance v. Friedlander, supra,* relied upon an annotation that suggests that presentment and demand are necessary not only to charge the maker on an accelerated instrument but to hold the endorser liable as well. Annot., "What is Essential to Exercise of Option to Accelerate Maturity of Bill or Note," 5 A.L.R. 2d 968 at § 6 (1949). This case was decided under the Negotiable Instrument Law (N.I.L.). It should be noted, however, that the provisions for an endorser's liability under the N.I.L. and the U.C.C. are identical.

There have been cases where express waivers have been ignored by courts in requiring notice, presentment, demand, etc. See *Parker, et al. v. Mazur,* 13 S.W.2d 174 (Tex. Civ. App. 1928). The Texas courts have examined the waiver clauses on a case by case determination and the waiver clauses have been sustained or stricken depending upon the facts of the individual cases, especially in view of the language of the waiver. *Cf. Purnell v. Follett,* 555 S.W.2d 761 (Tex. Civ. App. 1977), *Whalen v. Etheridge,* 428 S.W.2d 824 (Tex. Civ. App. 1968), *Interstate Life Insurance Company v. Turner,* 371 S.W.2d 913 (Tex. Civ. App. 1963), and *Sylvester v. Watkins,* 538 S.W.2d 827 (Tex. Civ. App. 1976). All these cases indicate that default, acceleration, dishonor, demand, protest, etc. are different creatures and each has unique features and requires different procedures regarding notice, enforcement, waiver, etc. There can be no question that some rights may be waived while others may not. *Cf. Gelman v. Public National Bank,* 377 F.2d 166 (D.C. Cir. 1967).

The terms of the note and deed of trust necessarily dictate the notice requirements in the case at issue before me. The note states that it "shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and be binding upon them and their successors

and assigns." Clearly, the note and deed of trust at issue here require notice of default to the maker (not the endorser). However, I find that the last quoted langauge of the note, coupled with the language "presentment, notice of dishonor, and protest are hereby waived by all makers, sureties, guarantors, and endorsers hereof," have the effect of making the endorser primarily liable on the note even though he retains his surety status. Defendant Lawson has waived those very conditions which would have otherwise made him secondarily liable only on the note. Yet, there is no waiver of notice of default, nor do I believe there can be such a waiver by a maker or by one who, I believe, occupies Lawson's position. While the language is more specific and precise than the language contained in the note at issue here, I rely on *Warren v. Washington Trust Bank*, 19 Wash. App. 348, 575 P.2d 1077 (1978), aff'd 92 Wash. 381, 598 P.2d 701 (1979).

Thus, I find that Lawson was both primarily liable on the note as a maker because of the previously cited language as well as secondarily liable as an endorser or surety. While the terms "primarily" and "secondarily" might seem contradictory, I believe they are not in conflict as used by me. *Cf.* F. Hart & W. Wallier, "Commercial Paper", 2 *Bender's U.C.C. Service* § 13.03 (1891). The holder of the note has, by the langauge of the note, made Lawson bound thereon as a principal and secondarily as a surety and Lawson's rights became those of the maker, to-wit, notice of default inured to Lawson's benefit. The holder's failure to give Lawson notice of default on the note discharges his obligation thereunder. The language of the note and deed of trust are strictly construed in favor of Lawson and serve to alter his status from gratuitous endorser to that of principal or maker.