**AMERICAN JET LEASING, Plaintiff,**

**v.**

**FLIGHT AMERICA, INC., d/b/a Cardinal Air Virginia, Defendant.**

Misc. No. 81–0002–L.
Civ. A. No. 81–0073–L.

United States District Court,
W. D. Virginia,
Lynchburg Division.

April 15, 1982.

Harold A. Black, Lynchburg, Va., for plaintiff.

Curtis M. Coward, Lynchburg, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The instant action is presently before the court on defendant's motion to dismiss the plaintiff's suggestion of garnishment and the writ of execution issued by this court on April 15, 1981. Evidence was taken and oral argument heard on defendant's motion on both May 26, 1981, and October 13, 1981. Jurisdiction is conferred upon this court by the fact that plaintiff is attempting to enforce a consent judgment entered in its favor, and against the defendant, by the United States District Court of the Eastern District of Missouri. Said judgment was properly docketed in the Western District of Virginia on February 23, 1981.

## SUMMARY OF FACTS

American Jet Leasing, Inc., d.b.a. American Jet Aviation, filed an action in the United States District Court for the Eastern District of Missouri on or about March 27, 1980, against Flight America, Inc., d.b.a. Air Virginia, seeking $125,000.00 in damages due to an alleged breach of a lease agreement covering a Lear Jet and associated equipment. Subsequently, the parties agreed upon a stipulation and settlement of all claims on August 15, 1980, (Plaintiff's Exhibit # 1) and judgment was entered upon this stipulation on September 15, 1980 (Plaintiff's Exhibit # 2). Pursuant to the terms of the stipulation and settlement agreement, Flight America paid the plaintiff $15,000.00 and executed a note, by the terms of which it agreed to pay $45,000.00 in sixty monthly installments of $750.00 plus interest at the higher of either nine percent (9%) or one percent (1%) over the "prime rate" as set from time to time by the Mercantile Trust Bank Company, N.A., of St. Louis, Missouri, beginning on October 5, 1980. In addition, Rodney H. Jaeger, President of Flight America, Inc., and David Peel, its former Vice President, executed personal notes in a like amount as security for Flight America's note. The stipulation and settlement agreement further provided that if the corporate defendant made payments toward the judgment amount plus interest, as set out above, the plaintiff would refrain from seeking a writ of execution or from attempting to enforce the judgment through other legal process. The agreement also set forth that all payments made by the corporate defendant would be credited to the amount due under the terms of the notes executed personally by Jaeger and Peel.

Flight America subsequently fell in arrears on the required monthly payments on December 5, 1980, with respect to interest due, and on January 6, 1981, with respect to principal due. As a result of the defendant's failure to make timely payments, the plaintiff's counsel, Andrew Rimmel, wrote Flight America's counsel, J. Michael Gamble, on February 9, 1981. (Plaintiff's Exhibit # 3). Mr. Rimmel's letter represents that the defendant's arrearages amount to $1,247.66 and that if this amount is not paid within seven (7) days of the date of the letter, "we shall take all such action as we deem advisable to protect our client's interest". Plaintiff received no payment within the seven (7) days.

On February 23, 1981, plaintiff caused its judgment from the U. S. District Court for the Eastern District of Missouri to be docketed in the U. S. District Court for the Western District of Virginia and in the Circuit Court of the County of Campbell, Virginia. On April 11, 1981, Mr. Jaeger received by certified mail a letter from plaintiff's counsel (Plaintiff's Exhibit # 5) advising him that on the 21st day of April, 1981, in the Circuit Court of the City of Lynchburg, Virginia, he would confess

judgment on the note Jaeger had personally endorsed to secure the debt of Flight America. No such action was in fact taken nor were any documents filed in the Circuit Court of the City of Lynchburg, Virginia, in pursuit of such remedy.

On April 14, 1981, plaintiff received a non-recourse cashier's check in the amount of $5,283.66 from the defendant, being the amount the defendant calculated was required to bring payments current. The amount actually due and owing according to plaintiff, as of April 14, 1981, was $6,142.38. On April 15, 1981, plaintiff filed a suggestion of garnishment in this court and had a writ of execution and garnishments issued against three bank accounts of the defendant, Flight America, Inc.

On April 20, 1981, Flight America issued its check No. 2894 in the amount of $2,231.00, representing it to be an additional payment in advance for the months of May and June, 1981, on the said $45,000.00 note, and mailed this check to the plaintiff. Plaintiff acknowledges being in receipt of defendant's check on April 22, 1981, but has not presented it for payment.

## ARGUMENT

Plaintiff takes three positions in response to defendant's motion to dismiss. Initially, plaintiff argues that the acceleration clause contained in the stipulation and settlement agreement is automatic, rather than optional, and therefore, not requiring an affirmative act by it in order to accelerate the entire indebtedness. Thus, plaintiff argues, the entire note automatically became due and payable on January 6, 1981.

Plaintiff's second position is that, if an affirmative act is required to place the note in default, they have in fact performed for such affirmative acts, to wit: 1) The February 9, 1981, letter from Rimmel to Gamble demanding payment in seven days, 2) Docketing of judgment in the U. S. District Court, 3) Docketing of judgment in the Circuit Court of the County of Campbell, Virginia, and 4) The letter received April 4, 1981, from plaintiff to Jaeger, advising him that the note he personally endorsed to guarantee payment was in default and that judgment was to be confessed in favor of the plaintiff on April 21, 1981.

Plaintiff's final position is that if an affirmative act is required to place the note in default, and if the four events enumerated above do not constitute such an affirmative act, then the payment of $5,283.66 is insufficient to cure Flight America's debt of $6,142.38.

Flight America's position, quite naturally, differs materially on all points. First, defendant argues that the plain language of the stipulation and settlement agreement, as well as the course of conduct between the parties during the prolonged period of default subsequent to December of 1980, make it clear that the acceleration provision in the agreement requires an affirmative act on the part of the noteholder. Defendant submits that none of the acts enumerated by the plaintiff amount to what the law requires to be a clear, unequivocal signal of acceleration. As to the final question, whether the defendant's payment received April 14, 1981, was sufficient to cure, defendant submits that the evidence will show that the interest calculations were made retroactively, during the course of payments, on information provided by the plaintiff. Thus, defendant asserts, they took what they understood to be the outstanding balance in March, and not having received from plaintiff what the amount of interest would be for the month, they made an estimated payment for April in the amount of $1,000.00. This payment, defendant submits, turned out to be only $48.60 short of what they actually owed. Flight America states that, in light of plaintiff's failure to communicate the April interest figures to it, it would be unconscionable to impose a burden of precise accuracy on Flight America with respect to its good faith payment on April 14, 1981. Defendant submits further that this payment represents as accurate an assessment of its obligations as was possible under the circumstances, in view of the course of conduct between the parties, and that the proffer of an additional check in the amount of

$2,231.00 to the plaintiff on April 20, 1981, is further evidence of their good faith attempt to pay their obligation.

## CONCLUSIONS OF LAW

■ The threshold question for the court's determination is whether the acceleration clause contained in the stipulation and settlement agreement operates automatically to make the entire debt due and payable, or whether some affirmative act by the plaintiff triggering acceleration is required on the part of the noteholder. The acceleration clause contained in the agreement reads as follows:

In the event the Corporate Defendant fails to make timely payments as called for herein, the entire balance then unpaid shall be due and payable and the Plaintiff may take whatever action it deems necessary to enforce collection of the judgment, including seeking a writ of execution, registering the judgment with another Court, or recording the judgment. (Plaintiff's Exhibit # 1).

While this clause appears to be of the automatic variety, rather than at the option of the holder, the majority of jurisdictions hold that an acceleration clause absolute in form is not self-operative, but leaves the option to the holder whether he will take advantage of the provision, and that without some action on his part to set the clause's provisions in motion, the full amount will not become immediately due merely on the happening of a default. *Chicago Railway Equipment Co. v. Merchants National Bank*, 136 U.S. 268, 10 S.Ct. 999, 34 L.Ed. 349 (1890); *United States v. Cardinal*, 452 F.Supp. 542, 548 (1978); 159 A.L.R. 1077, 1084. The reason most often given for the rule that an acceleration provision, though absolute in form, gives the creditor an option to declare the whole sum due, is based on the theory that the provision is primarily for the benefit of the creditor, who should be free to decide whether such protection is necessary under the circumstances of the default, and that the obligor should not be entitled to take advantage of his own wrong and cause an automatic change of maturity. The harsh effect of the automatic clause is often also mentioned as a factor in the court's decision to treat the clause as optional.

In a holding that the acceleration clause contained in the stipulation and settlement agreement is not self-operative, the court must address two additional issues. The first is whether the required affirmative action was taken by the noteholder prior to the presentation of the cashier's check on April 14, 1981; and second, whether the cashier's check presented on April 14, 1981, was adequate to cure the default?

■ The Virginia Supreme Court has held that the option to accelerate "may be accomplished by notice to the maker or some overt, unequivocal act calculated to appraise the maker effectively of the fact that the option has been exercised". *Florance v. Friedlander*, 209 Va. 520, 165 S.E.2d 388, 391 (1969). In the action before the court, plaintiff cites four affirmative acts it accomplished prior to receiving defendant's payment on April 14, 1981 that it alleges satisfies the requirements of acceleration. The first is plaintiff's attorney's letter of February 9, 1981, to defendant's attorney demanding payment within seven (7) days or threatening to "take all such action as we deem advisable to protect our client's interest", (Plaintiff's Exhibit # 3). The second and third are the docketing of plaintiff's judgment in both federal and state court in Virginia. The fourth is plaintiff's letter of April 11, 1981, notifying defendant's president, Rodney Jaeger, that the note he personally endorsed to guarantee the payment was in default and that judgment would be confessed in favor of the plaintiff on April 21, 1981. The court finds none of these actions sufficient to amount to a valid exercise of an option to accelerate the maturity of the note.

■ While it is impossible to formulate a hard and fast rule by which each act can be immediately classified in regard to its sufficiency, the test seems to be the definiteness and finality of the holder's action as an expression of his election. Stated generally, the rule is that the exercise of the option

must be made in a manner so clear and unequivocal as to leave no doubt as to the holder's intention and to appraise the maker effectively of the fact that the option has been exercised. Plaintiff's letter of February 9, 1981, is nothing more than a conditional threat that lacks the required definiteness and finality. *See, Sharpe v. Talley*, 215 Va. 615, 212 S.E.2d 273 (1975). Plaintiff's letter of April 11, 1981, is equally ineffective in that it was prospective in nature and never effectuated due to defendant's payment of April 14, 1981. The plaintiff's act of docketing its judgment is likewise not so clear and unequivocal an act as to leave no doubt as to the holder's intention and to appraise defendant effectively of the fact that the option has been exercised. This is particularly true in light of the exchange of correspondence between counsel for the parties.

█ The final question for the court's determination is whether defendant's payment of April 14, 1981, was sufficient to cure the default. As a result of the hearing held on October 13, 1981, in order to take evidence on this very issue, the court is of the opinion that the defendant's payment of the $5,283.00 was sufficient to cure the default. The evidence produced was to the effect that Mr. Michael Gamble, defendant's attorney, was responsible for apprising the defendant what amount was due the plaintiff each month. A letter of Mr. Gamble's, dated September 30, 1981, was admitted into evidence for the purpose of showing how he determined what amount was due and owing to the plaintiff as of April 14, 1981. From the evidence submitted, it appears that the discrepancy between the amount plaintiff claims was owed, $6,142.38, and what defendant says was owed, $5,283.66, as of April 14, 1981, was caused by three factors. The first results from Mr. Gamble's misinterpretation of a series of correspondence sent to him by Mr. Andrew Rimmel. This misunderstanding apparently arose when Mr. Rimmel referred to payments being due for the month of December, etc. The evidence revealed that the payment due at the beginning of each month consisted of the principal payment for the upcoming month and the interest payment for the past, or preceding month. Mr. Gamble apparently interpreted Mr. Rimmel's reference to "December's payment" to consist of interest and principal for December instead of principal for December and interest for November. Thus, Mr. Gamble's misinterpretation caused him to omit the first month's interest payment from his calculations. The second factor was caused by Mr. Gamble's estimating the April payment to be $1,000.00. According to Mr. Rimmel's letter to Mr. Gamble of December 31, 1980, the interest rate set by the Mercantile Trust Company, N.A., of St. Louis, Missouri, was to govern the parties' agreement through the period January 1, 1981, through March 31, 1981. Apparently a new interest rate was to be established on April 1, 1981, and thus Mr. Gamble, being unaware of what the new interest rate was, was forced to guess at what the April payment would be. In actuality, Mr. Gamble's estimate was short by $48.60. The final discrepancy apparently results from plaintiff's inclusion of an interest charge for the period of April 1 to April 14, 1981. As described above, however, the practice between the parties had been to pay April's interest payment in May and May's interest payment in June and so forth. The court finds the discrepancy between what defendant paid to plaintiff on April 14, 1981, and what was actually owed to be $766.38.

Due to what the court finds to be no more than innocent mistakes in the defendant's calculations of its arrearages and in light of the harsh nature of the result of the relief sought by plaintiff, this court finds defendant's payment on April 14, 1981, sufficient to cure the default. The court is also mindful of the defendant's good faith payment to the plaintiff of $2,231.00 received April 22, 1981.

For these reasons an appropriate Order will this day issue granting defendant's motion to dismiss the writ of execution.