**UNITED STATES of America, Plaintiff,**

v.

**Patrick NEHL, Defendant.**

**Civ. No. 83–1022.**

United States District Court,
D. South Dakota, N.D.

Dec. 18, 1984.

---

| Installment | Installment Date |
|---|---|
| $5,564.00 | January 1, 1976 |
| $6,010.00 | January 1, 1977 |
| $5,760.00 | January 1, 1978 |
| $5,510.00 | January 1, 1979 |
| $5,260.00 | January 1, 1980 |

The notes contained a clause stating that upon default, FmHA "at its option may declare all or any part of the indebtedness due and payable."

Defendant also had loans from the Bank of Lemmon, at Lemmon, South Dakota, and maintained his FmHA supervised checking account at this Bank.

At some point prior to January 22, 1977, defendant defaulted on his loans. On or about January 22, 1977, FmHA and defendant worked out a plan to liquidate defendant's assets, and defendant agreed to a sale of his property. On or about February 4, 1977, defendant paid $8,665 to FmHA, which applied this money to the notes in the following manner:

1. Note A—Principal: $309.18; Interest: $4,456.82
2. Note B—Principal: 0 ; Interest: $1,040.00
3. Note C—Principal: $728.86; Interest: $2,130.14

On February 14, 1977, FmHA sent Form FmHA 455–3, "Agreement for Public Sale by Borrower", to the Bank of Lemmon for signatures, and it was executed prior to March 5, 1977.

On or about February 25, 1977, defendant paid FmHA $2,596.50, which was applied to Note A as $2,435.87 to principal, and $160.63 to interest.

Defendant's cattle were sold on February 22, 1977, and of the proceeds of this sale, $24,938.08 was paid to FmHA on March 21, 1977. The application of this money was done in the following manner:

1. Note A—Principal: $15,754.67; Interest: $132.31
2. Note B—Principal: $ 8,700.00; Interest: $351.10
    (thus paid in full.)

Defendant's machinery and equipment were sold at public auction on March 5, 1977. The proceeds were paid to the FmHA, $12,776.47 on April 11, 1977, and applied to Note A as $12,693.65 to principal and $82.82 to interest.

---

Ray P. Murley, Asst. U.S. Atty., Sioux Falls, S.D., for plaintiff.

Harvey Crow, Jr., McIntosh, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### FACTUAL BACKGROUND

No facts, but only the significance to be ascribed thereto, are in dispute in this action. Defendant borrowed $43,900 from the Farmers's Home Administration (FmHA) on February 21, 1973. Under this promissory note (hereinafter "Note A"), defendant was to repay the loan in the following installments:

| Installment | Installment Date |
|---|---|
| $2,438.00 | January 1, 1974 |
| $5,079.00 | January 1, 1975 |
| $5,432.00 | January 1, 1976 |
| $5,756.00 | January 1, 1977 |
| $7,050.00 | January 1, 1978 |
| $7,257.00 | January 1, 1979 |
| $7,234.00 | January 1, 1980 |

On May 23, 1975, defendant executed two more promissory notes to FmHA. The first, which is not involved in this action, was for $8,700 (hereinafter "Note B"). The second (hereinafter "Note C") was for $25,000 and was to be repaid in the following installments:

On May 23, 1977, FmHA sent defendant a notice of acceleration using Form FmHA 455–21.

## DISCUSSION

The issue before the court is whether plaintiff's action to recover the balance due on Notes A and C is barred by the six year statute of limitations at 28 U.S.C. § 2415(a). This action was commenced May 3, 1983. If the acceleration of defendant's notes was not accomplished until the actual notice of acceleration was issued on May 23, 1977, the action is not barred and judgment must be entered for plaintiff. If, however, the acceleration was accomplished by plaintiff's actions in January through April, 1977, the action is barred, and judgment must be entered for defendant.

"Where a note provides for repayment in installments, 'each installment is a distinct cause of action and the statute [of limitations] begins to run against each installment from the time it matures or becomes due.'" *United States v. Tilleraas*, 538 F.Supp. 1, 4 (N.D.Ohio 1981). The "limitations period on the entire debt does not begin to run until the holder elects to declare the balance due and owing under the acceleration clause." *Id.* at 5.

The acceleration clause involved in these notes expressly states that its exercise is optional with FmHA. Thus, the option was left "to the holder [FmHA], whether he will take advantage of the provision, and ... without *some action on his part* to set the clause's provisions in motion, the full amount will not become immediately due merely on the happening of a default." *American Jet Leasing v. Flight America, Inc.*, 537 F.Supp. 745, 748 (W.D.Va.1982). (Emphasis supplied). *See also United States v. Cardinal*, 452 F.Supp. 542 (D.Vt. 1978); *Chase Nat. Bank of City of New York v. Burg*, 32 F.Supp. 230, 232 (D.Minn. 1940).

Plaintiff, of course, argues that the "action" that accelerated the notes and started the running of the statute of limitations was the notice sent on May 23, 1977. It is clear, however, that actions other than an explicit notice of acceleration may also constitute acceleration. To determine whether a particular action is an acceleration, as *American Jet Leasing, supra*, 537 F.Supp. at 748–749, put it:

> the test seems to be the definiteness and finality of the holder's action as an expression of his election. Stated generally, the rule is that the exercise of the option must be made in a manner so clear and equivocal as to leave no doubt as to the holder's intention and to appraise the maker effectively of the fact that the option has been exercised.

As the evidence presented at trial indicates, FmHA requested, and defendant agreed, to liquidate his farming operation. Under 7 C.F.R. § 1962.40(a)(2), this liquidation was approved by the completion of Form FmHA 455–3, which was evidently executed in February, 1977. The disposition of at least part of assets was accomplished by public sale on March 5, 1977, in accordance with 7 C.F.R. § 1962.41(a): "when liquidation has been approved, FmHA usually will encourage the borrower to sell security ... at public auction in the borrower's own name.... The County Supervisor will arrange to promptly receive the proceeds of the sale, due FmHA for application on the borrower's indebtedness." As FmHA received the proceeds from the sales of defendant's assets during February, March and April, 1977, FmHA applied the payments to the notes in such a way that $31,193.37 was applied to principal and $4,832.58 was applied to interest on Note A; Note B was paid in full; and $728.86 was applied to principal and $2,130.14 was applied to interest on Note C. Yet, under the terms of Note A, the most that could have been due on Note A in April, 1977—in the absence of an acceleration—was *$18,705*, or $12,000 less than what FmHA applied to that note.

Plaintiff argues that the payments FmHA received from defendant were "extra payments", a term mentioned in the notes and defined at 7 C.F.R. § 1951.8(b), and that the application of the payments

had nothing to do with acceleration, but was governed by 7 C.F.R. §§ 1951.8, 1951.9 and 1951.10. The court finds these "extra payments" regulations inapplicable here. The context of these regulations is subpart A of 7 C.F.R. Part 1951, which deals generally with "account servicing policies", and sets forth procedures to be followed in servicing the loan accounts of borrowers whose loans are still active. *See, e.g.,* 7 C.F.R. §§ 1951.33, 1951.40, allowing reamortization and deferment "on *existing* loans." Defendant, who had agreed at FmHA urging to undergo liquidation, was hardly in this category in the spring of 1977. Further, the definition of "extra payments" at § 1951.8(b) does not mention proceeds from liquidation sales, and the liquidation regulations applicable here, at 7 C.F.R. § 1962.40 *et seq.,* contain their own system of priorities in the distribution and application of proceeds from liquidation sales. *Compare, e.g.,* 7 C.F.R. §§ 1962.-44(b)(4), (6), (8) *with* 7 C.F.R. § 1951.9(b). The FmHA's dealings with defendant in January through April, 1977 were clearly governed by 7 C.F.R. § 1962.40 *et seq.,* not 7 C.F.R. § 1951.8 *et seq.*

The evidence is therefore clear that, under the terms of the notes, FmHA had no right, in April, 1977, to any installments that were due only on January 1, 1978, or later *unless* there had been an acceleration.[1] *See Tilleraas, supra,* 538 F.Supp. at 5. In fact, plaintiff's own regulations show that acceleration is an essential part of the liquidation defendant was undergoing in the early months of 1977; 7 C.F.R. § 1962.-40(c)(1) provides that when "liquidation has been approved, the County Supervisor *will accelerate all unmatured installments* by using Form FmHA 455-21." (Emphasis supplied). It is true that Form FmHA 455-21 was not mailed until May 23, 1977, but this mailing was a mere formality that did nothing more than affirm what had already been done. The evidence shows that liquidation was approved in either February or early March, 1977. No later than April 11, 1977, when FmHA applied substantially more principal to Note A than was due under the installments provided by Note A, FmHA took definite, clear and unequivocal, and final action leaving no doubt that FmHA had, as required by § 1962.40(c)(1), exercised its option to "accelerate *all* unmatured installments."

The evidence of acceleration is, of course, somewhat more clear as to Note A than Note C. The evidence presented at trial, however, indicates that all of defendant's notes were treated as a single unit by FmHA during the liquidation period. The fact less money was applied to Note C than to Note A indicates only that Note A, as the older note, received higher priority. The inescapable conclusion from all the evidence is that when FmHA exercised its option to accelerate, it did so as to *all* of defendant's notes to FmHA, and not merely as to Note A.

Plaintiff's action being barred by the statute of limitations at 28 U.S.C. § 2415(a), judgment must therefore be entered for defendant. This opinion constitutes this court's findings of fact and conclusions of law.

---

1. The notes do provide that "prepayments ... may be made at any time *at the option* of the Borrower." (Emphasis supplied) Plaintiff, at trial, presented no evidence that defendant had exercised any option to prepay his loans, and prepayment would certainly have been unusual in liquidation.