813 F.2d 193
 UNITED STATES of America and Berton J. Roth, As Substitute
Trustee Under the Mortgage Dated January 15, 1982,
With Great Plains Gasification
Associates, Appellees,
State of North Dakota ex rel. Nicholas J. Spaeth, Attorney
General of North Dakota, Intervenor below,
v.
GREAT PLAINS GASIFICATION ASSOCIATES,
ANR Gasification Properties Company, As a Partner of Great
Plains Gasification Associates, Appellant,
MCN Coal Gasification Company, As a Partner of Great Plains
Gasification Associates; Tenneco SNG Inc., As a Partner of
Great Plains Gasification Associates; Transco Coal Gas
Company, As a Partner of Great Plains Gasification
Associates; Pacific Synthetic Fuel Company, As a Partner of
Great Plains Gasification Associates; Natural Gas Pipeline
Company of America; ANR Pipeline Company, Formerly Michigan
Wisconsin Pipeline Company; Tennessee Gas Pipeline Company,
and Transcontinental Gas Pipe Line Company,
Natural Gas Pipeline Co. of America
v.
FEDERAL FINANCING BANK.
 No. 86-5256.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1987.
Decided March 11, 1987.
Rehearing Denied April 16, 1987.
 
 George L. Saunders, Jr., Chicago, Ill., for appellant.
 Dean S. Cooper, Washington, D.C., for appellees.
 Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and CAHILL*, District Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Appellant, ANR Gasification Properties Company, appeals from the district court's[1] order granting summary judgment in favor of the United States in this foreclosure action. For the reasons stated below we affirm the district court's order.
 
 I. BACKGROUND
 
 2
 ANR Gasification Properties Company (ANR) is one of five general partners in Great Plains Gasification Associates (Great Plains). The partnership was formed for the purpose of constructing, owning, and operating the Great Plains Coal Gasification Plant in North Dakota. The plant converts lignite coal into synthetic natural gas. The design, construction, and operation of the plant were delegated to ANG Coal Gasification Company (ANG), a subsidiary of ANR.
 
 
 3
 The project was financed by a loan from the Federal Financing Bank for approximately $1.5 billion. The Department of Energy (DOE) guaranteed the loan pursuant to the Federal Nonnuclear Energy Research and Development Act of 1974, 42 U.S.C. Sec. 5901 et seq. (1982) (the Act). The loan was secured by a mortgage on virtually all partnership assets. Section 13.03 of the mortgage agreement provides that "[t]o the full extent it may legally do so, Borrower hereby expressly waives any and all rights of redemption from sale under order or decree of foreclosure of this Mortgage * * *." Section 13.04 provides that the rights and obligations of the parties to the mortgage are to be governed by federal law.
 
 
 4
 In mid-1983, when decreasing oil prices threatened the viability of the project, Great Plains submitted a proposal, subject to DOE approval, whereby the existing loan obligations would be restructured and an additional $720 million would be loaned. On June 30, 1985, while the proposal was pending, Great Plains failed to make its $70,338,753.90 interest payment and $328,500,000 principal payment. A standstill agreement was entered, extending the due date until August 1, 1985, so that restructuring alternatives could be pursued. On July 30, 1985, the DOE rejected Great Plains' proposal and on August 1 the partners exercised their right to terminate their participation in the project. The DOE directed the project administrator, ANG, to continue operating the plant. On October 9, 1985, the loan was accelerated and DOE paid the Federal Financing Bank the entire amount due, thereby becoming subrogated to the bank's rights against Great Plains.
 
 
 5
 Shortly after default the government filed suit against Great Plains seeking foreclosure of the mortgage and sale of the mortgaged property. After acceleration of the note the government moved for summary judgment on these issues. Great Plains resisted the motion arguing that the foreclosure should be conducted in accordance with North Dakota law and consequently it should be allowed to redeem for up to one year after the foreclosure sale. The district court granted the government's motion holding that federal law, under which there is no right of redemption, is applicable. Prior to the foreclosure sale, scheduled for May 28, 1986, Great Plains moved to amend the court's order to defer the sale for six months in recognition of an equitable right of redemption. The district court denied the motion, and on June 30, 1986, the property was sold to the sole bidder, the United States, for $1 billion.
 
 
 6
 On appeal ANR argues that the district court erred in applying federal law rather than North Dakota law and in failing to grant an equitable right of redemption. We disagree.
 
 II. DISCUSSION
 A. Choice of Law
 
 7
 In United States v. Kimbell Foods, Inc., 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979), the Supreme Court stated that it "has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs." It is therefore axiomatic that if the Act provided for a right of redemption then ANR would be entitled to it. Likewise, if the Act explicitly denied such a right then none would exist. In this case, however, Congress has not spoken explicitly on the issue of redemption.
 
 
 8
 ANR argues that because of the absence of explicit language on redemption we must look to the balancing test of Kimbell Foods to determine the appropriate rule of decision. In Kimbell Foods the issue was whether, in the absence of specific congressional directions, state law or federal common law should govern lien priorities. The court balanced three interests in determining that state law was the appropriate federal rule of decision: whether there was a need for a nationally uniform body of law, whether application of state law would frustrate specific objectives of the federal program, and whether application of a federal rule would disrupt commercial relationships based on state law. Id. at 728-29, 99 S.Ct. at 1458-59.
 
 
 9
 ANR argues that the district court incorrectly weighed these factors when determining that federal law applies. We need not reach this issue because although Congress did not specifically address the issue of redemption, the Act does provide sufficient direction for a decision in this case. Since there is a congressional directive, Kimbell Foods is inapplicable.
 
 
 10
 Were we to reverse the district court and look to North Dakota law for our rule of decision Great Plains would have the right to redeem at any time up to one year after judicial sale. N.D.Cent. Code Sec. 32-19-18 (1976). During this period Great Plains would be entitled to the possession, rents, use, and benefit of the plant. N.D.Cent. Code Sec. 28-24-11 (1974). Federal law, however, leads to a different result. Without specifically mentioning a right of redemption, Congress presupposed default and delineated the DOE's rights in the event of default. Section 19(g) of the Act provides:
 
 
 11
 (1) If there is a default by the borrower * * * the holder of the obligation [lender] shall have the right to demand payment of the unpaid amount from the Secretary * * *.
 
 
 12
 (2) If the Secretary makes a payment under paragraph (1) of this subsection, the Secretary shall be subrogated to the rights of the recipient of such payment [lender] * * * including the authority to complete, maintain, operate, lease, or otherwise dispose of any property acquired pursuant to such guarantee or related agreements, * * * without regard to the provisions of the Federal Property and Administrative Services Act of 1949, * * * or any other law, or to permit the borrower, pursuant to an agreement with the Secretary, to continue to pursue the purposes of the demonstration facility if the Secretary determines that this is in the public interest. The rights of the Secretary with respect to any property acquired pursuant to such guarantee or related agreements, shall be superior to the rights of any other person with respect to such property.
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 (4) * * * The guarantee agreement shall include such detailed terms and conditions as the Secretary deems appropriate to protect the interests of the United States in the case of default and to have available all the patents and technology necessary for any person selected, including, but not limited to the Secretary, to complete and operate the defaulting project. * * *
 
 
 16
 42 U.S.C. Sec. 5919(g). The regulations promulgated pursuant to the Act provide that upon default the secured party shall take actions reasonably necessary to preserve, protect, and maintain the collateral to enable the United States to achieve maximum recovery of the amount owed. 10 C.F.R. Sec. 796.61(a)(2) (1986).
 
 
 17
 The district court held and ANR argues that these provisions merely define the DOE's right to manage the property upon default, rather than define the rights of the parties vis a vis each other. The government, on the other hand, argues that these provisions constitute sufficient congressional directives to make the Kimbell Foods test inapplicable. The Act gives the DOE authority to run the plant as well as provides that the DOE's rights shall be superior to those of any other person, the government argues.
 
 
 18
 We agree with the government because we find that the language of the Act would be rendered superfluous if North Dakota law were to apply. If Great Plains were allowed to maintain possession of the plant for up to a year after the foreclosure sale, the DOE could not exercise its right to operate the plant and thus the DOE's rights would be subservient to those of Great Plains. Granted, Congress has not explicitly dealt with redemption rights of loans guaranteed under the Act but it has provided the procedure to be followed upon default. Whereas under North Dakota law Great Plains, as debtor, would have certain superior rights to the property upon default, so the DOE, under the Act, has rights to the property which are superior to all others. Congress has the authority to determine priority rights arising under nationwide federal programs and in this case has granted superior rights to the United States.
 
 
 19
 Congress has also instructed the DOE to include in the guarantee agreement terms necessary to protect the interests of the United States. The DOE accomplished this by including a provision waiving any redemption rights. ANR argues that such clauses are void under North Dakota law but since we have already determined that state law is inapplicable, the clause is valid. See United States v. Stadium Apartments, Inc., 425 F.2d 358, 362 (9th Cir.), cert. denied, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 926 (1970).
 
 B. Equitable Right of Redemption
 
 20
 ANR argues that assuming arguendo that North Dakota law is inapplicable, the district court erred in not granting an equitable right of redemption either before or after the foreclosure sale. We disagree. This court has held that under federal law a defaulting debtor's right of redemption is terminated by the foreclosure sale. No statutory right of redemption exists after the sale. United States v. Victory Highway Village, Inc., 662 F.2d 488 (8th Cir.1981). As to granting an equitable period of redemption before the sale, ANR concedes that the "terms and methods of judicial sale are largely in the discretion of the district judge directing the sale." Revere Copper & Brass, Inc. v. Adriance Machine Works, 68 F.2d 708, 709 (2d Cir.1934). In light of the fact that the sale did not take place until June 30, 1986, one year after Great Plains initially failed to meet its obligations, we cannot say that the district court abused its discretion in not deferring the sale for an additional six months. ANR could have redeemed anytime prior to the sale and they have not shown any circumstances requiring an extension.
 
 III. CONCLUSION
 
 21
 Today we hold that the North Dakota redemption statute does not apply to the foreclosure of a loan guaranteed pursuant to the Federal Nonnuclear Research and Development Act of 1974. We also hold that the district court did not err when it refused to defer the foreclosure sale or recognize a redemption period after the sale. Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Patrick A. Conmy, United States Chief District Judge for the District of North Dakota