2001 D.S.D. 7

**UNITED STATES of America, Plaintiff,**

v.

**Arthur G. SATHER, Defendant.**

**No. CIV 99–1031.**

United States District Court,
D. South Dakota,
Northern Division.

Feb. 26, 2001.

Cheryl Schrempp Dupris, U.S. Attorney's Office, Pierre, SD, for Plaintiff.

Jeffrey T. Sveen, Gregory Charles Magera, Siegel, Barnett & Schutz, Aberdeen, SD, for Defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KORNMANN, District Judge.

### FACTS

[¶ 1] Arthur G. Sather ("Sather") and others borrowed money from what is now the Farm Service Agency ("FSA"). Sather executed or assumed certain promissory notes.

(1) A note for $116,000.00 (No. 43–04) was executed on December 28, 1976, and rescheduled on January 4, 1984, with a maturity date of January 4, 1991. Annual payments were required beginning January 1, 1985. Sather made no payments.

(2) A note for $200,000.00 (No. 43–02) was executed on December 28, 1976. The term was for 20 years and the note would have matured on December 28, 1996. The first annual payment was due January 1, 1978. Sather's last voluntary payment was on January 6, 1984.

(3) As a result of an assumption agreement (No. 43–03) on April 18, 1980, Sather owed $106,552.42 plus interest and the first annual payment was due on January 1, 1982. Sather's last voluntary payment on the assumption agreement (and the promissory notes assumed) was on January 6, 1984. The assumption agreement would have matured on April 18, 1995.

(4) A note for $50,000.00 (No. 43–05) was executed on April 17, 1985, calling for payment of principal and interest one year later with an obvious maturity date of April 17, 1986. Sather last voluntarily made a payment on March 3, 1986.

[¶ 2] All notes were secured by real estate and chattel mortgages. In April of 1986, Sather filed a Chapter 11 petition in bankruptcy. The bankruptcy judge ordered the real estate sold (with the proceeds going to the first mortgagee, a creditor senior to FSA) and the FSA mortgages discharged. FSA filed a proof of claim in the amount of $370,023.15 but received nothing. No debts were discharged in the bankruptcy action and the action was dismissed by order on June 3, 1988. FSA has never agreed to release the debts. On July 23, 1997, and August 20, 1997, FSA notified Sather of his continuing liability and informed him of his servicing options. On August 20, 1997, FSA notified Sather of its intention to make collections on the debts by administrative offsets and the first offset was accomplished on September 4, 1997. Since that date, $29,143.68 has been administratively offset and applied to one or more of Sather's debts to FSA. How and to what debts the offsets

were applied is not part of the record before the Court. Sather administratively appealed the offset plan and the FSA decision was upheld by the National Appeals Division.

[¶ 3] On January 13, 1999, FSA gave notice of acceleration and made demand for payments in full. FSA concedes that the notice of acceleration was, as they say, *pro forma* since all notes had previously matured and were due in full; there was nothing to accelerate. FSA brought suit on the promissory notes on July 12, 1999.

[¶ 4] After the affirmative defense of the statute of limitations was raised, FSA conceded that the notes designated as 43–04 and 43–05 (described in numbered paragraphs 1 and 4 above) cannot be collected through a judgment because of the statute of limitations. The parties agree that the applicable limitations period is six years, pursuant to 28 U.S.C. § 2415(a) and the Court agrees. Under the statute as applicable here, every action for money damages brought by the United States which is founded upon any contract is barred unless the complaint is filed within six years after the right of action accrues. The principle legal question before the Court is: when did the "right of action" or "rights of action" accrue?

[¶ 5] Sather contends the six years commenced to run on all the debts from the date of his default. FSA contends the six years does not commence to run until the maturity dates of the notes for which FSA still seeks a judgment, namely April 18, 1995, as to 43–03 (the assumption agreement) and December 28, 1996, as to 43–02. In the alternative, both parties dance around the issue of whether the six year period commences to run separately from the due date of each annual installment not paid. The parties have not addressed all issues, as will later appear.

[¶ 6] The parties filed cross motions for summary judgment.

## DISCUSSION

[¶ 7] In considering any motion for summary judgment, this Court must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Donaho v. FMC Corporation*, 74 F.3d 894, 897–898 (8th Cir.1996). Any factual inconsistencies are to be resolved in favor of the non-moving party.

[¶ 8] Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c), *Donaho v. FMC Corporation*, 74 F.3d 894, 898 (8th Cir.1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment * * * against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact", since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995). As to the principle issue, there are no material fact disputes present here. Sather argues that material questions of fact exist as to whether the filing of the proof of claim in the bankruptcy action was the equivalent of FSA giving notice of its intent to accelerate. The Court rejects this argument and holds that such question is a question of law, not of fact. Sather also argues that material questions of fact exist as to whether FSA waited too long before accelerating the notes. This contention is also rejected since any such question would be a matter of law. The

question, in any event, as will appear, is not material.

■ [¶ 9] This court has jurisdiction to hear this action under 28 U.S.C. § 1345 which provides:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

[¶ 10] Federal jurisdiction based upon the above statute renders inapplicable the rule of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), which requires adherence to the appropriate substantive law of a particular state in a diversity case. *Tri–State Ins. Co. v. United States*, 340 F.2d 542, 544 (8th Cir.1965). The Supreme Court of the United States "has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs." *United States v. Great Plains Gasification Associates*, 813 F.2d 193, 195 (8th Cir.1987), (quoting *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979)).

■ [¶ 11] State substantive law may be applied in mortgage foreclosure actions, at least where no party argues to the contrary. *See National Bank of Eastern Ark. v. General Mills*, 283 F.2d 574, 576 (8th Cir.1960). In a mortgage foreclosure case, the district court may apply the state's method as the federal law of the case. *United States v. Belanger*, 598 F.Supp. 598 (D. MD 1984). In *United States v. Molitor*, 157 B.R. 427, 430 (W.D.Wis.1992), the bankruptcy court noted:

The foreclosure action in this case involves the rights of the United States under the Farmers Home Administration (FmHA) [now Farm Services Agency] Program. In *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711, the Supreme Court acknowledged that federal law applies to cases in which the government is asserting or foreclosing a lien, but articulated a three-prong test for determining whether state laws should be adopted as the federal rule of decision. *Id.* at 726, 99 S.Ct. at 1457. The test asks the following questions: (1) Is the nature of the federal program such that a nationally-uniform rule of law is needed? (2) Would the application of the state rule frustrate specific objectives of the federal program? (3) Would the application of a federal rule disrupt commercial relationships which are predicated on state law? *Id.* 728–29, 99 S.Ct. at 1458–59.

■ [¶ 12] The present case, however, is neither a foreclosure action nor an action dealing with the priority of liens. The Court determines that federal law, not state law, should be applied in this case. The Court is required to interpret a federal statute of limitation. *United States v. Scholnick*, 606 F.2d 160, 164 (6th Cir.1979). The federal government has an obvious interest in collecting debts owed to the government. *United States v. Tilleraas*, 709 F.2d 1088, 1090 (6th Cir.1983).

■ [¶ 13] Sather claims the debts were, in effect, automatically accelerated when he filed for bankruptcy and FSA filed a proof of claim for the entire amount of the indebtedness, as FSA was required to do under bankruptcy law. Sather advances this claim despite the fact that his bankruptcy action was ultimately dismissed with no discharge and no resolution as to the debts of Sather to FSA. The notes in question, as many notes do, do not provide that the filing of a bankruptcy petition operates to cause the notes to become due in full immediately. Sather argues for what could be called an implied notice of intent to accelerate. The Court refuses to start down this slippery slope. Normally, a defaulting debtor will argue that the notice to accelerate was not sufficient and definite and that the lawsuit should be dismissed. In South Dakota, a creditor with the right or option to demand

acceleration must do so clearly and unequivocally. The creditor must take affirmative action so as to leave no doubt in the mind of the debtor as to the intentions of the creditor. *Phipps v. First Federal Savings and Loan Association, Inc.,* 438 N.W.2d 814 (S.D.1989). The "generally prevailing rule" in South Dakota "is that a tender of arrears made before the holder of a mortgage has exercised his option to make the entire amount due prevents the exercise of the option. However, exercise of the option terminates the right of the mortgagor to compel acceptance by the mortgagee of the defaulted monthly payments." *Id.* at 819 (citations omitted). The notice must be clearly communicated to the debtor or manifested to the debtor by some outward affirmative act and, until this is done, the creditor may not proceed with an effective legal action. *H.C. Clark Implement Co., Inc. v. Wiedmer,* 389 N.W.2d 816 (S.D.1986).

[¶ 14] Federal law, the applicable law in this case, tracks the South Dakota requirement that the exercise of the option to accelerate must be clear and unequivocal as to the holder's intention so that the debtor well knows that the option has been exercised. *United States v. Nehl,* 599 F.Supp. 324, 326, (D.S.D.1984) (quoting *American Jet Leasing v. Flight America, Inc.,* 537 F.Supp. 745, 748–749 (W.D.Va.1982)). The United States Court of Appeals for the Eighth Circuit has also relied on and paraphrased language from *American Jet Leasing.* "Because acceleration clauses are generally for the benefit of the creditor, courts tread lightly on the creditor's freedom to decide whether acceleration is immediately necessary upon the occurrence of a default ... Therefore, acceleration is seldom implied, and courts usually require that an acceleration be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention and no doubt that the borrower is apprised that the option has been exercised." *United States v. Feterl,* 849 F.2d 354, 357 (8th Cir.1988). These are all in the nature of protections for the debtor. The debtor should not casually

or by implication of some kind be stripped of the right to bring the delinquent payments current, resulting in a requirement that the debtor immediately pay the entire debt, especially given the low interest rates historically extended by FSA. FSA did nothing to even suggest its intent to accelerate until the actual written notice was given on January 13, 1999. What FSA was doing internally was not communicated to Sather and has no legal significance in this action. No previous acceleration occurred as a matter of law and the statute of limitations did not commence to run upon the filing of the bankruptcy petition or the dismissal of the bankruptcy action.

[¶ 15] The Court also rejects the argument of Sather that the statute of limitations commenced to run on his first default. The present case is somewhat similar to the facts in *United States v. Nehl,* 599 F.Supp. 324 (D.S.D.1984). The predecessor of FSA brought an action on promissory notes.

> The acceleration clause involved in these notes expressly states that its exercise is optional with FmHA. Thus, the option was left "to the holder (FmHA), whether he will take advantage of the provision, and ... without *some action on his part* to set the clause's provisions in motion, the full amount will not become immediately due merely on the happening of a default." *American Jet Leasing v. Flight America, Inc.,* 537 F.Supp. 745, 748 (W.D.Va.1982). (Emphasis supplied). *See also United States v. Cardinal,* 452 F.Supp. 542 (D.Vt.1978); *Chase Nat'l Bank of City of New York v. Burg,* 32 F.Supp. 230 (D.Minn.1940).

*Id.* at 326. This same principle of law is expressed in *United States on Behalf of Small Business Admin. v. LaFrance,* 728 F.Supp. 1116, 1119 (D.Del.1990), and *United States v. Dos Cabezas Corp.,* 995 F.2d 1486, 1490 (9th Cir.1993), namely that a cause of action does not accrue on a mere default by the debtor who gave a promissory note. A number of cases on which

Sather relies do not involve installment notes but notes with a single maturity date. One of these cases is *Federal Deposit Ins. Corp. v. Bledsoe*, 989 F.2d 805 (5th Cir.1993).

[¶ 16] In *United States v. Dold*, 462 F.Supp. 801 (D.S.D.1978), the note for a federally guaranteed student loan, unlike the facts in the Sather case, did not specify any particular repayment schedule. In addition, student loan defaults and the consequences of such defaults are defined by a specific statute. *Dold* and its holding that the statute of limitations begins to run when the defendant has defaulted is not on point in the present case. The general statement made in the case was made without any citation to authority and the Court declines in any event to hold that an event of default triggers the running of the statute of limitations as to not only the delinquent payment but all future payments not even due at that point. In the absence of properly exercising the right of acceleration, FSA had no cause of action as to installment payments not then due.

[¶ 17] The Court also rejects the contention of FSA that the statute of limitations does not commence to run until the maturity date of the promissory note in question. Carrying FSA's argument to its ultimate conclusion would mean that, despite continuous annual defaults for many years, the failure to pay at the maturity date would first present the accrual of a cause of action to the creditor. This makes no sense. In addition, to adopt the contention of FSA would allow FSA to frustrate the operation of the statute of limitations by delaying, perhaps unreasonably, in giving the notice of intent to accelerate. While there is no requirement in the Eighth Circuit that the government make its acceleration demand, a demand which is optional by the terms of the instrument of debt, within a reasonable time, there is such a requirement in the Ninth Circuit. *See United States v. Gottlieb*, 948 F.2d 1128, 1130–31 (9th Cir.1991), and *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1490 (9th Cir.1993).

[¶ 18] No careful creditor or the creditor's attorney would draft an installment note, particularly one with payments due over a long period of time, without an acceleration clause. The reason is obvious: in the absence of such a cause, the creditor would be required to bring a multitude of lawsuits. Even in the face of a default, any claim for installments that were not yet due could not be successfully advanced. Such claims would not be ripe. There is little practical difference between, on the one hand, not having an acceleration clause available and, on the other hand, having the option to use it but not using it until after the maturity dates of the instruments.

[¶ 19] I agree with the conclusion of Judge Porter in *Nehl, supra*. Judge Porter relied on *United States v. Tilleraas*, 538 F.Supp. 1 (N.D.Ohio 1981). "Where a note provides for repayment in installments, 'each installment is a distinct cause of action and the statute [of limitations] begins to run against each installment from the time it matures or becomes due.' *United States v. Tilleraas*, 538 F.Supp. at 4. The 'limitations period on the entire debt does not begin to run until the holder elects to declare the balance due and owing under the acceleration clause.' *Id.* at 5." *Nehl*, 326.

[¶ 20] "One noteworthy qualification to the 'demand rule' is that '[w]hen a debtor's obligation is payable in installments, the general rule is that the period [for the statute of limitations] begins to run on each installment from the time it falls due [in the absence of acceleration].' *United States v. Myers*, 308 F.Supp. 859 (D.Md. 1970.)" *U.S. on Behalf of Small Business Admin. v. LaFrance*, 728 F.Supp. 1116, 1120 (D.Del.1990).

[¶ 21] A somewhat similar case is *Federal Deposit Ins. Corp. v. Galloway*, 856 F.2d 112 (10th Cir.1988), in which the court construed the application of 28 U.S.C. § 2415(a) to a guarantor of installment notes. The holding was that a cause of

action against the guarantor accrues only as each obligation of the principal debtor comes due and the statute of limitations applies independently to each obligation guaranteed; the six-year statute of limitations period runs on each cause of action separately. *Id.* at 116. The holding was based in part on *Federal Deposit Ins. Corp. v. Consolidated Mortgage & Finance Corp.,* 805 F.2d 14, 22 (1st Cir.1986).

[¶ 22] "Unless the creditor exercises the option, the statute of limitations applies to each installment separately, and does not begin to run on any installment until it is due." *Dos Cabezas,* supra, at 1489.

[¶ 23] Given the holding of the Court, the contention of Sather as to unreasonable delay in giving notice of acceleration is rejected. The notice of acceleration was a nullity in the present case since all notes and more importantly all installments were already past due. The timing of FSA giving the notice will not, in this case, frustrate the purpose of the statute of limitations. Likewise, Sather's claims of estoppel and laches, which almost never apply to the government in any case, have no merit here, given the holding of the Court. Any claims of accord and satisfaction and waiver are also rejected, there being no facts to support any such claim.

[¶ 24] Although not raised by the parties, the Court wondered whether the administrative offsets, in the nature of involuntary payments, would constitute part payments, thus reviving the causes of action otherwise barred by the statute of limitations. The statute provides that "in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment." The payment is not described as voluntary or involuntary. The Court adopts the reasoning in *United States v. Lorince,* 773 F.Supp. 1082, 1087 (N.D.Ill. 1991), that not every partial payment is sufficient to restart the period of limitations; the "circumstances of the payment must reflect the intent of the debtor to honor the debt." Clearly, that fact does not exist here. Sather had no intention to pay anything.

[¶ 25] Another issue not addressed or raised by the parties concerns the effect of the administrative offsets, now and in the future. FSA has determined to exercise the right of offset against future federal payments, not including social security, that would otherwise be paid to Sather. The law is clear as to these offsets. The United States has always had the right to collect debts under offsets. *See United States v. Munsey Trust Co. of Washington,* 332 U.S. 234, 239, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). In addition, the statute of limitations itself specifies that its provisions "shall not prevent the United States . . . from collecting any claim of the United States by means of administrative offset, in accordance with section 3716 of title 31." 28 U.S.C. § 2415(i). "The limitation set forth in section 2415(a) does not terminate all of the government's rights on a contract claim after six years, but merely eliminates one potential remedy—the filing of a lawsuit seeking money damages. There are numerous avenues by which the underlying obligation may be enforced after the six-year period." *Thomas v. Bennett,* 856 F.2d 1165, 1168 (8th Cir.1988). "Section 2415(a) in particular cuts off the remedy of a civil action on a debt brought by the government but leaves open many other means of enforcing the government's right. * * * The phrase 'legally enforceable' therefore does not mean 'not barred by the statute of limitations.' *Gerrard v. United States Office of Education,* 656 F.Supp., 570, 574 (N.D.Cal.1987)." *Id.*

[¶ 26] Facts are not before the Court to determine exactly how and in what manner the offsets were applied to the debts. The record is clear that no right of offset has been claimed as to No. 43–05. It has been claimed as to the other three debts. FSA notified Sather that the offsets would be applied against debts as they existed on January 1, 1989. Did FSA apply the offsets to those portions of the debts barred

by the statute of limitations or did they apply them to the debts not barred by the statute of limitations? Without these facts, the Court is unable to enter a money judgment.

[¶ 27] Installments due after July 12, 1993, are not barred by the statute of limitations. As to the assumption agreement (No. 43–03), two payments of $15,646.00 each are due and unpaid after July 12, 1993. As to the other note (No. 43–02), three payments of $21,522.00 each are due and unpaid. These payments due total $95,858 .00 plus interest. All other installments are barred by the statute of limitations. A partial summary judgment should be granted to both parties.

[¶ 28] Now, therefore,

[¶ 29] IT IS ORDERED, as follows:

1) The motion of FSA (Doc. 6) for a summary judgment is granted in part and is denied in part.

2) The motion of Sather (Doc. 15) for a summary judgment is granted in part and is denied in part.

3) The statute of limitations bars the recovery of a judgment by FSA against Sather for any installments not due after July 12, 1993, plus interest. As to this, there are no genuine issues of any material fact.

4) The statute of limitations does not bar the recovery of a judgment by FSA against Sather for all installments due after July 12, 1993, plus interest. As to this, there are no genuine issues of any material fact.

5) The Court retains jurisdiction to determine the amount of the judgment, including any credits for offsets applied by FSA to installments due after July 12, 1993. To the extent any offsets were applied to installments due before July 12, 1993, Sather has no right to receive any credit against the amount of the judgment debt.