UNITED STATES of America, on Behalf of its Agency, The SMALL BUSINESS ADMINISTRATION, Plaintiff,

v.

Christine A. LaFRANCE, Defendant.

Civ. A. 86–553–CMW.

United States District Court,
D. Delaware.

Jan. 18, 1990.

---

William C. Carpenter, Jr., U.S. Atty., and Carolyn T. Greene, Asst. U.S. Atty., Wilmington, Del., for plaintiff.

John M. Bloxom, IV, of Bayard, Handelman & Murdoch, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff United States of America, on behalf of its agency, the Small Business Administration ("SBA"), brought suit in this Court on November 24, 1986, against Defendant Christine A. LaFrance. The United States sought a judgment in the amount of $37,209.10 plus interest, costs, and fees, for recovery of the unpaid balance of an SBA loan in default.

On April 28, 1989 both plaintiff United States and defendant LaFrance filed motions for summary judgment. Accordingly, the parties' cross motions for summary judgment are before the Court.

This Court has jurisdiction pursuant to 28 U.S.C. § 1345.

For the reasons which will be stated herein, the Court grants the defendant's motion for summary judgment in part and denies the defendant's motion in part, and grants the plaintiff's motion for summary judgment in part and denies the plaintiff's motion in part.

## I. FACTS

Defendant LaFrance, jointly with her former husband, Joseph V. LaFrance, received a loan in the amount of $36,000 on about July 23, 1975, from the SBA through an assistance program for distressed mushroom farmers.[1] Defendant and her former husband executed and delivered a promissory note (the "note") to the SBA at about the same time. The note was secured by a perfected security interest in certain personal property of Joseph and Christine LaFrance and a subordination agreement executed by Southeast National Bank of Pennsylvania.[2] The terms of the note required monthly payments of interest for the period of July 23, 1975, through December 23, 1975, and thereafter, monthly installments of principal and interest.

The loan was paid through July of 1979. At some time after July 23, 1979, Joseph V. LaFrance abandoned his mushroom business and with it all of the personal property as security for the note. The United States took no action at this time by foreclosure, lien, or otherwise. Defendant and Joseph V. LaFrance were divorced by final decree of the Family Court of the State of Delaware on July 28, 1979.

On April 21, 1980, the United States changed the address for mailing correspondence regarding the loan. Apparently, future correspondence would be directed from defendant's former marital address at "Beechwood Drive, R.D. # 2, Kennett Square, Pennsylvania 19348", to defendant's then and now current residence at "4949 Mermaid Boulevard, Wilmington, Delaware 19808." On May 20, 1980, the United States advised Joseph V. LaFrance, by letter mailed to "Newark Road and Church Street, Toughkenamon, Pennsylvania 19374", that it was not receiving payments on the loan, and that Mr. LaFrance should immediately contact the SBA about this matter. The United States did not make any separate communication to defendant at this time.[3]

Acting under the subordination agreement, the Southeast National Bank informed the United States on about October 6, 1982, that a distribution from the Residual Marital Trust of James LaFrance was expected within one month to a year, and inquired as to whether the United States desired any of the proceeds. Communications between the SBA and the trustee/executor did not lead to any satisfactory solution.

Because the loan was then in default, the SBA accelerated the obligation and declared the full amount of the loan due as provided by the terms of the note. The SBA made this demand for payment by certified letter dated September 23, 1983; this letter was mailed to "Joseph & Christine LaFrance" at the Toughkenamon, Pennsylvania address. Defendant, however, was not informed of the substance of this letter until after the filing of the present suit. Defendant's first direct notice of the default of the loan and the SBA's corresponding demand of the full amount due came by letter to her Wilmington address from the United States Attorney for the District of Delaware, dated October 14, 1986.

The United States commenced this action on November 24, 1986.[4]

**1.** Disbursement of the loan occurred in two installments, one on April 23, 1975, in the amount of $30,533.13, and one on July 23, 1975, in the amount of $5,466.87.

**2.** Under the terms of the subordination agreement, the Southeast National Bank, as trustee of the Residual Marital Trust of James LaFrance, agreed to subordinate its right to repayment of an outstanding loan of Joseph V. LaFrance to repayment to the United States of the note.

**3.** The United States made another change in the mailing address for future correspondence about the loan. On about February 13, 1981, the United States changed the mailing address for correspondence from defendant's address in Wilmington to "Newark Road and Church Street, Toughkenamon, Pennsylvania 19374." Defendant did not learn of this change until after the filing of the present lawsuit.

**4.** The Court has recently learned that the United States previously had instituted a recovery action against Joseph V. LaFrance in the United States District Court for the Eastern District of Pennsylvania for the gross amount at issue in the present action. The United States recovered payments in the amount of $22,396.16 from that action. The effect of this recovery from Joseph V. LaFrance on the present suit will be discussed more fully in part IIIC, *infra.*

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c) ("Rule 56"). A court reviewing a summary judgment motion "must view all facts, and any reasonable inference from those facts, in the light most favorable to the party opposing summary judgment." *Wilmington Housing Authority v. Pan Builders, Inc.*, 665 F.Supp. 351, 353 (D.Del. 1987) (citing *Adickes v. Kress Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). The movant bears the burden of demonstrating the absence of any genuine issues of material fact by the record properly before the court, regardless of which party would have the burden of persuasion at trial. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (en banc), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). *See also* 1 *Moore's Federal Practice* 1989 Rules Pamphlet (Federal Judiciary Edition) § 56.3[13].

## III. DISCUSSION

Initially, the Court notes that the defendant admits that the loan is in default. Defendant's Answering Brief In Opposition to Plaintiff's Motion For Summary Judgment ("D.A.B.") at 3. Defendant asserts, however, that the genuine issue of material fact in dispute in this case relates to "the amount which, subject to the defenses set forth in Defendant's Answer, remains outstanding on the indebtedness underlying Plaintiff's cause of action." *Id.* Defendant, in support of her own motion for summary judgment, raises various affirmative defenses which she contends reduce or completely bar the United States' claim. For convenience, the Court first will address defendant's affirmative defenses.

### A. Statute of Limitations

Defendant argues that the United States' claim is barred by the applicable statute of limitations. Opening Brief In Support Of Motion For Summary Judgment In Favor Of Defendant Christine A. LaFrance And Against Plaintiff, United States Of America ("D.O.B.") at 8–11. This defense is actually two-pronged in that defendant first maintains that the statute of limitations precludes recovery of amounts (installments) required to have been paid before November 24, 1980. D.O.B. at 8–9. Defendant further submits that the statute of limitations forestalls an action for the entire debt because the United States accelerated the balance of the loan prior to November 24, 1980. D.O.B. at 9–11. As discussed more fully below, the Court concludes that the United States may not recover for installments required to have been paid before November 24, 1980, but defendant is liable for all unpaid installments and interest due thereafter.

#### 1. Applicable Law

Both parties assert, and the Court agrees, that the governing statute of limitations is set forth in 28 U.S.C. § 2415(a). *See United States v. Kurtz*, 525 F.Supp. 734, 740 (E.D.Pa.), *aff'd*, 688 F.2d 827 (3d Cir.1981), *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982). Section 2415(a) provides in pertinent part:

[E]very action for money damages brought by the United States or an officer thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the cause of action accrues....

It is necessary, therefore, for the Court to identify precisely when the United States' cause of action accrued within the meaning of section 2415(a). This determination is to be made in accordance with federal law. *United States v. Cardinal*, 452 F.Supp. 542, 544 (D.Vt.1978).

In a suit involving a note in default, a cause of action does not accrue on mere default—a "breach of condition stated in an optional acceleration clause *permits* the holder to treat the entire debt as due, but the maturity date does not accelerate until he so treats it." *United States v. Cardinal*, 452 F.Supp. 542, 547 (D.Vt.1978) (emphasis original). *See also United States v. Gilmore*, 698 F.2d 1095, 1097 (10th Cir. 1983) (SBA cause of action did not accrue until demand for entire amount was made);

*United States v. Rollinson,* 629 F.Supp. 581, 584 (D.D.C.1986) (SBA's right to accelerate was optional and thus cause of action was not recognized until demand made), *aff'd,* 866 F.2d 1463 (D.C.Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989); *United States v. Nehl,* 599 F.Supp. 324, 326 (D.South Dakota 1984) (default alone does not trigger optional acceleration clause). To analyze what type of conduct by the note holder represents a demand for the entire amount due, "the [general] rule is that the exercise of the option must be made in a manner so clear and unequivocal as to leave no doubt as to the holder's intention and to appraise the maker effectively of the fact that the option has been exercised." *American Jet Leasing v. Flight America, Inc.,* 537 F.Supp. 745, 748–49 (W.D.Va.1982). *See also* 11 Am. Jur.2d Bills and Notes § 296.

One noteworthy qualification to the "demand rule" is that "[w]hen a debtor's obligation is payable in installments, the general rule is that the period [for the statute of limitations] begins to run on each installment from the time it falls due [in the absence of acceleration]." *United States v. Myers,* 308 F.Supp. 859, 862 (D.Md.1970). *See also United States v. Tilleraas,* 538 F.Supp. 1, 4–5 (N.D.Ohio 1981) (applying rule in student loan default proceeding), *aff'd,* 709 F.2d 1088 (6th Cir.1983); 12 Am. Jur.2d Bills and Notes, § 1047 ("default does not ipso facto start the running of the statute as to the entire debt but only as to the installment or interest which is in default").

### 2. Application to Present Facts

The promissory note itself is signed by defendant and her former husband, Joseph V. LaFrance; it further contains the provision "THIS IS A JOINT AND SEVERAL OBLIGATION OF THE UNDERSIGNED." With regard to failure to make payments when due, the note recites the following:

Holder is authorized to declare all or any part of the Indebtedness immediately due and payable upon the happening of any of the following events: (1) Failure to pay any part of the Indebtedness when due....

The Court views this clause as an optional acceleration clause, giving the holder (the United States) the right to demand immediate payment of the full amount due on default.

The parties strenuously dispute the time at which the United States invoked its option to declare the full amount of the loan due and owing. Defendant urges that this action transpired by the letter dated May 20, 1980 to Mr. Joseph V. LaFrance of Toughkenamon, Pennsylvania. D.O.B. at 10. If demand was indeed made by this letter, the action in its entirety would be barred by the section 2415(a). Plaintiff, however, argues that demand was made, at the earliest, by the certified letter dated September 23, 1983 to Joseph and Christine LaFrance at Toughkenamon, Pennsylvania.

■ After study of the letter of May 20, 1980, the Court concludes that this letter did not operate as an invocation of the option to accelerate. This letter indicated that payments were not being made and had not been made for a long period of time. The material language is the statement that "[t]he purpose of this letter is to acquaint you with the fact that you should contact the undersigned at once to discuss what arrangements you plan to make to pay the loan in the near future." The Court holds that this letter, as a matter of law, did not manifest the United States' exercise of the acceleration option "in a manner so clear and unequivocal as to leave no doubt as to the holder's intention and to appraise the maker effectively of the fact that the option has been exercised." *American Jet Leasing,* 537 F.Supp. at 749. This letter, construed in a light most favorable to defendant, signifies a request to the addressee to contact a loan officer to discuss the nonpayment of the loan.

The United States' subsequent letter of September 23, 1983 is much more definite, and contains the explicit language that "demand is hereby made upon you for immedi-

ate payment of [the] balance." [5] The Court further decides that, as a matter of law, the letter dated September 23, 1983 represented the United States' exercise of the option to accelerate. Consequently, section 2415(a) does not bar the present action in its entirety because it was filed less than six years after September 23, 1983.

■ Although section 2415(a) does not bar the present action in its entirety, the Court rules that defendant is not liable for any installments on the note required to have been paid before November 24, 1980. This Court will follow the holding of *United States v. Myers*, 308 F.Supp. 859 (D.Md. 1970) in reasoning that until demand was made (September 23, 1983), each unpaid installment constituted a separate cause of action.[6] As a result, the statute of limitations, section 2415(a), has expired for any unpaid installments due before November 24, 1980.[7]

In summary, the Court determines that there are no genuine issues of material fact relevant to defendant's statute of limitations defense. The Court grants defendant's motion for summary judgment as it relates to any amounts the United States seeks to recover based upon the unpaid installments due before November 24, 1980. The Court grants the United States' motion for summary judgment as to the liability of defendant for any amounts it seeks to recover based upon the unpaid installments due on or after November 24, 1980.

### B. Doctrine of Laches

Defendant's next affirmative defense is that the United States' claim is barred in its entirety by the doctrine of laches. D.O.B. at 11–14. This defense raises more difficult questions for the Court. Initially, the Court must confront the broad issue of whether the doctrine of laches may apply against the United States where the United States attempts to recover the unpaid balance of an SBA loan in default when the United States has filed its action within the six year statute of limitations period of 28 U.S.C. § 2415(a). Second, if the Court determines that the doctrine of laches may operate against the United States in this situation, the Court must then ascertain if any possible delay by the United States in bringing this suit was unreasonable, and then if this unreasonable delay prejudiced the defendant. Based upon the reasoning to follow, the Court rules that the doctrine of laches does not apply against the United States in the present case. Moreover, the Court does not find that there was an unreasonable delay by the United States in bringing this suit.

■ Historically, the United States has enjoyed immunity from the defense of laches in enforcing its rights. *See, e.g., United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Board of County Commissioners v. United States*, 308 U.S. 343, 351, 60 S.Ct. 285, 288, 84 L.Ed. 313 (1939); *Chesapeake & Delaware Canal Co. v. United States*, 250 U.S. 123, 125, 39 S.Ct. 407, 408, 63 L.Ed. 889 (1919); *United States v. Gera*, 409

---

5. The letter of September 23, 1983 also contains the language that "[t]he Small Business Administration does hereby declare the entire balance of the debt due and you are liable for that balance."

6. The Court realizes that the statute of limitations at issue in *Myers* was not § 2415(a), but a Maryland State statute of limitations. *See Myers*, 308 F.Supp. at 862. This distinction, however, is of no moment because the Court relies only upon *Myers'* analysis of the status of the installments due from the date of default to the date of acceleration.

7. The Court notes that the United States has conspicuously avoided to address this point, as

the emphasis of the United States' analysis has been on the law governing the relationship between the date of acceleration and the statute of limitations. *See* "Memorandum In Support of Plaintiff's Motion For Summary Judgment" at 5–8, and "United States' Answering Brief In Opposition To Defendant's Motion For Summary Judgment" at 4–5. The authority cited by the United States did not discuss the status of the unpaid amounts due between the time of default and acceleration. *See United States v. Cardinal*, 452 F.Supp. 542, 547, n. 8 (D.Vt.1978). The holding in *United States v. Rollinson*, 629 F.Supp. 581 (D.D.C.1986), *aff'd*, 866 F.2d 1463 (D.C.Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989), is not dispositive insofar as it is inconsistent with *Myers*.

F.2d 117, 120 (3d Cir.1969). Defendant is fully cognizant of this axiom but attempts to limit its scope by urging that the United States "enjoys no immunity from the doctrine in actions asserting claims on commercial paper." D.O.B. at 13 (citing *Clearfield Trust Co. v. United States,* 318 U.S. 363, 369, 63 S.Ct. 573, 576, 87 L.Ed. 838 (1943)). Although the United States Supreme Court used extremely broad language in *Clearfield,*[8] the Court is unwilling to abrogate the United States' historic immunity to the defense of laches in this case. *Clearfield* addressed an action brought by the United States to recover an amount paid on a forged government check. The factual context of the present case is far too removed to deny the United States its conventional immunity from a laches defense in enforcing its rights in the case at bar.

Defendant further comments that "[t]he oft-cited rule that the federal government is immune from the defense of laches has been whittled away by the courts in recent years." D.O.B. at 13, n. 7. The Court, however, has found no previous decision that upheld a laches defense against the United States in a suit for recovery of the amount of an SBA loan in default.[9] Whatever whittling away of the traditional teaching may have occurred to date, this Court is unwilling to proceed any further. The Court also observes that *United States v. Andresen,* 583 F.Supp. 1084 (W.D.Va. 1984) is similar to the present case. In *Andresen,* the United States filed suit to recover on a guaranty of a loan, in default, assigned to the SBA by the original lender, a private bank. The defendant had asserted laches as a defense, but the court soundly rejected this defense by holding that "the defense of laches is not generally available to be used against the United States ... [and the] case thus falls within this well-settled law." *Id.* at 1086.[10]

In conclusion, the Court holds that defendant's laches defense has no legal basis on the present facts.

■ Even if the Court should decide that the doctrine of laches may operate against the United States in the present case, defendant has failed to prove the prerequisites for this defense. To prevail in a laches defense, a party must demonstrate (1) lack of diligence by the party bringing the claim (the United States) and (2) resulting prejudice to the defendant. *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). Defendant contends that the United States showed a "lack of diligence in pursuing the rights it once had against Defendant ... in the seven year, four month interval between Joseph LaFrance's default under the Note and its first communication of that fact to Defendant." D.O.B. at 14. The undisputed record indicates, however, that any delay on the part of the United States was occasioned by defendant's own conduct.[11] The record certainly does not substantiate defendant's contention that the United States showed a lack of diligence in pursuing its claim against her. Defendant views the United States' conduct as a delib-

---

**8.** "The fact that the drawee is the United States and the laches those of its employees are not material ... [t]he United States as drawee of commercial paper stands in no different light than any other drawee." *Clearfield,* 318 U.S. at 369, 63 S.Ct. at 576.

**9.** The precedent defendant has cited in support of this proposition is thus unavailing. *See S.E.R., Jobs for Progress, Inc. v. United States,* 759 F.2d 1, 6–9 (Fed.Cir.1985) (discussing laches but not applying it against United States on facts of case in contract action); *United States v. Pisani,* 646 F.2d 83, 89 (3d Cir.1981) (finding defendant did not prove laches on part of United States in action for recovery of Medicare overpayments); *Lane v. United States,* 639 F.2d 758, 760–61, 226 Ct.Cl. 303 (1981) (upholding laches defense against United States in action by United States to recover illicit gratuities received by federal employees); *United States v. Conservation Chem. Co.,* 619 F.Supp. 162, 206 (D.C.Mo.1985) (mentioning possibility of laches defense against United States in action for costs incurred in connection with clean-up of hazardous waste site).

**10.** The Court went on to comment that "the government is in the position of a creditor attempting to protect the public fisc." *Andresen,* 583 F.Supp. at 1086.

**11.** *See* "United States Answering Brief In Opposition To Defendant's Motion For Summary Judgment" at 7. Defendant has not really taken issue with this version of events.

erate refusal to communicate with her, but the record simply does not support this characterization.

In conclusion, the Court holds that as a matter of law, defendant has no defense to the complaint under the doctrine of laches.

### C. Partial Payment

As mentioned previously, defendant argues that a material fact in dispute in the present case is the actual amount that is owed to the United States. D.A.B. at 3. Defendant states that she has no clear and definitive representation from the SBA as to the amount owed, particularly in view of the United States' recovery of monies from its independent lawsuit against Joseph V. LaFrance. *Id.* at 3–4. This matter, as the Court observes, may have arisen from the difficulties that the United States incurred in forwarding defendant a certified statement of her account, which took into consideration the monies recovered from Joseph V. LaFrance.

On January 5, 1990 the Court (and defendant) received a copy of a "Certified Statement of Account" as of December 21, 1989. The Court requests that the United States communicate with the defendant and the Court as to the amount owed in view of the holding in this case that defendant is not liable for any installment payments required to have been made before November 24, 1980. All legal issues in this case appear to have been resolved, and upon resubmission of the amount due, the Court may be able to issue a final judgment for a sum certain.[12] In this regard the United States' motion for summary judgment, as it relates to the actual amount due, is denied at the present time.

### IV. CONCLUSION

The Court rules that defendant is not liable for any unpaid installments due before November 24, 1980, because the statute of limitations has expired for these amounts. The Court holds that the United States' claim is not barred in its entirety by the statute of limitations or the doctrine of laches. Therefore, the plaintiff's motion is granted in part and denied in part, and the defendant's motion is granted in part and denied in part.

An Order will issue in accordance with this Opinion.

---

12. The Court makes this request with the understanding that the Certified Statement of Amount

may include installments owed before November 24, 1980.