UNITED STATES of America, Plaintiff–Appellant,

v.

DOS CABEZAS CORP., an Arizona corporation; State of Arizona Department of Economic Security, et al., Defendants–Appellees.

No. 91–16324.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1992.

Decided June 21, 1993.

Robert S. Greenspan and Steve Frank, Asst. Attys. Gen., Civil Div., Washington, DC, for plaintiff-appellant.

J. Michael Jimmerson and Lowell E. Rothschild, Mesch, Clark & Rothschild, Tucson, AZ, Robert S. Segelbaum, Asst. Atty. Gen., Economic Security Div., Phoenix, AZ, for defendants-appellees.

Before: SNEED, ALARCON, and CANBY, Circuit Judges.

CANBY, Circuit Judge:

The United States appeals the district court's ruling that, in an action brought by the United States for a deficiency judgment on a promissory note that was secured by a deed of trust, the United States is subject to a six-year limitations period. In addition the United States challenges the district court's determination that, because the government's cause of action accrued on the date the defendant defaulted on the obligation, rather than on the date that the government accelerated the date payment was due, the government's action to recover a deficiency judgment is time-barred.

We affirm the district court's judgment.

## BACKGROUND

The issues in this case revolve around the timing of the events giving rise to the government's cause of action. In May 1979, defendants-appellees Dos Cabezas Corporation (the Corporation) and six individuals received from the Farmers Home Administration four emergency installment loans. The Corporation and the six individuals evidenced these loans by signing promissory notes and the Corporation executed a deed of trust, which the individuals acknowledged, conveying several parcels of real estate to secure the loans.

Under the terms of the loan agreement, payments were due in periodic installments beginning on January 1, 1980. The deed of trust provided that should the borrowers default in performance of their obligations the government could at its option "declare the entire amount unpaid under the note and any indebtedness to the government hereby secured immediately due and payable, ... and ... bring an action to foreclose this instrument, obtain a deficiency judgment, or enforce any other remedy provided by law." The promissory notes contained similar acceleration clauses.

The Corporation failed to make timely payments on any of the notes. In April 1981, fifteen months after the Corporation defaulted, the Farmers Home Administration accelerated the debts and demanded full payment within fifteen days. Eight days later, the Corporation, but not the individual defendants, filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code. As a result, an automatic stay went into effect, precluding the government from bringing a foreclosure action against the Corporation. 11 U.S.C. § 362(a)(4) (1993). In January 1982, the government requested relief from the stay and permission to proceed with its foreclosure and default remedies under the deed of trust. The bankruptcy court granted the government's request two months later.

In November 1983, and in the spring of 1987, the Federal District Court for North Dakota entered orders in a nationwide class action enjoining the Farmers Home Administration from accelerating or foreclosing on its loans. *Coleman v. Block,* 580 F.Supp. 192 (D.N.D.1983); *Coleman v. Block,* 663 F.Supp. 1315 (D.N.D.1987), *vacated as moot,* 864 F.2d 604 (8th Cir.1988), *cert. denied sub nom. Coleman v. Yeutter,* 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). The injunctions remained in effect for a total of 21.5 months.

The government brought an action against the Corporation and the six individuals in October 1989, seeking to foreclose on the deed of trust and requesting the court to retain jurisdiction so that the government could bring an action against the individual defendants in the case of a deficiency. The parties stipulated to the foreclosure and about one year later the district court entered a partial judgment, ordering foreclosure of the property in the deed of trust and providing that the issue of the individual

defendants' liability would be determined in subsequent motions. The Farmers Home Administration sold the property in January 1991.

The individual defendants moved to dismiss the government's subsequent action for a deficiency judgment. According to the individual defendants, the government's cause of action accrued on the date of the first nonpayment under the notes, January 1, 1980, and was therefore time-barred under either Arizona's six-year statute of limitations or the six-year limitations period provided in 28 U.S.C. § 2415(a). The government maintained that because foreclosure actions in which the United States is the plaintiff are not subject to a limitations period, the action was not time-barred. Alternatively, the government argued, even if the action were subject to a six-year limitations period, the action was timely because the claim accrued on the date the loans were accelerated and the 21.5 month *Coleman* injunctions plus the 10.5 month bankruptcy stay gave the government an additional thirty-two months in which to file its claim.

The district court issued an order granting the defendants' motion for summary judgment and barring the deficiency action. According to the district court, in the absence of a federal statute of limitations, the Arizona statute of limitations for foreclosure actions would apply. Without ruling definitively on whether the automatic stay tolled the limitations period applicable to the government's cause of action against the individual defendants, the district court concluded that the government's action was not timely filed.

## ISSUES ON APPEAL

This case presents several novel questions of law. Foremost is the question of what, if any, limitations period applies to an action for a post-foreclosure deficiency judgment in which the United States is the plaintiff. If we determine that the action is subject to the six-year statute of limitations, then we must decide at what date the government's cause of action accrued, the date of default or the date of acceleration. In addition, we must decide whether the stay issued in the corporate bankruptcy proceedings tolled the limitations period applicable to the government's action against the individual debtors.

## DISCUSSION

## I. THE LIMITATIONS PERIOD

■■■ No federal statute imposes a limitations period specifically on actions for post-foreclosure deficiency judgments brought by the United States. Nor have the courts resolved what, if any, limitations period should apply. In the absence of a federal statute expressly imposing or adopting one, the United States is not bound by any limitations period. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1939). When a statute does limit the time in which the government may bring a cause of action, moreover, the court strictly construes the statute in favor of the government. *Badaracco v. Commissioner,* 464 U.S. 386, 391, 104 S.Ct. 756, 760, 78 L.Ed.2d 549 (1984); *Federal Deposit Ins. Corp. v. Former Officers & Directors of Metro Bank,* 884 F.2d 1304, 1309 (9th Cir.1989), *cert. denied sub nom., Lee v. F.D.I.C.,* 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990). These rules protect public rights from injury or losses incurred through the negligence of public officers. *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938) (citation omitted).

■■■ Federal law does, however, limit to six years after the right of action accrues the time in which the government may bring a suit for money damages founded on a contract. 28 U.S.C. § 2415(a) (1978 & Supp. 1992). Actions brought by the United States "to establish title to, or the right of possession of, real or personal property" are exempt from the limitations period. *Id.* § 2415(c). In applying these provisions, the courts have drawn a distinction between actions for contract damages and actions to foreclose on mortgages and deeds of trust, holding that the power of sale contained in a mortgage or deed of trust survives regardless of whether the statute of limitations has extinguished the underlying obligation. *United States v. Freidus,* 769 F.Supp. 1266,

1273 (S.D.N.Y.1991).[1] We agree with the reasoning of these courts. The government's suit to foreclose on the deed of trust constituted an action to "establish title to, or right of possession of, real or personal property." 28 U.S.C. § 2415(c); *Curry,* 679 F.Supp. at 969–71; *accord Freidus,* 769 F.Supp. at 1273; *Copper,* 709 F.Supp. at 908; *Gerrard,* 656 F.Supp. at 574. The foreclosure action itself was not subject to any limitations period.

■ This determination, however, does not resolve the question of whether a statute of limitations cuts off the time in which the United States may bring an action to recover a deficiency judgment following foreclosure on a deed of trust. The government asserts that the individual defendants' liability for the deficiency arises not from the promissory notes but, rather, from the deed of trust itself, which provides that in the event of a default the government has the right to bring an action to foreclose and obtain a deficiency judgment. Therefore, the government argues, because obtaining a deficiency judgment is "an incident of foreclosure," and because foreclosure actions are not subject to a limitations period, no statute of limitations should apply.

We disagree with both the starting point and ending point of the government's argument. A deficiency following foreclosure is neither meaningful nor measurable without reference to the underlying debt. It is that obligation, arising from contract, that is being enforced when a deficiency judgment is obtained. We conclude, therefore, that a suit to recover a deficiency debt is "an action for money damages founded upon a contract" subject to the six-year limitations period provided in 28 U.S.C. § 2415(a).

## II. ACCRUAL DATE

Because we conclude that the action for a post-foreclosure deficiency judgment is subject to the six-year limitations period provided ed in § 2415(a), we must determine when the government's cause of action accrued, for it is on this date that the statute of limitations began to run. The defendants maintain that the cause accrued in January 1980, when the defendants initially defaulted on the loans. The government contends that the cause accrued 15 months later, in April 1982, when it accelerated the defendants' account. To a degree, both are correct.

■ In the case of default on an instrument containing an automatic acceleration clause, "the debt is fully matured and the statute of limitations begins running when the debtor first defaults." 54 C.J.S. *Limitations of Actions* § 153. But if the acceleration clause in a note is optional, the debtor is not liable for payment on future nondelinquent installments "until the creditor chooses to take advantage of the clause and accelerate the balance. Unless the creditor exercises the option, the statute of limitations applies to each installment separately, and does not begin to run on any installment until it is due...." *Id.*[2] Thus, the government's cause of action for installments not yet due at the time of default did not accrue until the government accelerated their due date and the defendants defaulted on the payment. On the other hand, the government's cause of action for payments already in default at the time of acceleration accrued on the date of each separate default, when the defendants became obligated to make those payments. 54 C.J.S. *Limitations of Actions* § 153. Some of those claims for early installments may be barred under any view of tolling; the primary point of contention centers on the later-accrued, accelerated installments.

■ The defendants assert that even if the date of acceleration marks accrual of much of the government's claim, the government should be barred from bringing the deficiency judgment action because it did not accel-

---

1. *E.g., United States v. Edwards,* 765 F.Supp. 1215, 1222 (M.D.Pa.1991); *United States v. Copper,* 709 F.Supp. 905, 907 (N.D.Iowa 1988); *Curry v. Small Business Admin.,* 679 F.Supp. 966, 969–71 (N.D.Cal.1987); *Gerrard v. United States Office of Educ.,* 656 F.Supp. 570, 574 (N.D.Cal. 1987); *Cracco v. Cox,* 66 A.D.2d 447, 448, 414 N.Y.S.2d 404 (1979).

2. *Accord United States v. Feterl,* 849 F.2d 354, 356 (8th Cir.1988); *United States v. Gilmore,* 698 F.2d 1095, 1097 (10th Cir.1983); *United States v. Alessi,* 599 F.2d 513, 515 (2d Cir.1979); *United States v. Cardinal,* 452 F.Supp. 542, 547 (D.C.Vt. 1978).

erate the debt within a reasonable period after default. While we are sympathetic with the proposition that, when the time for demand is not stipulated in the statute, the government must make its demand within a reasonable time, *United States v. Gottlieb,* 948 F.2d 1128, 1130–31 (9th Cir.1991), we reject the defendants' contention that the government's delay of fifteen months after the initial default constitutes an unreasonable time. The purpose of requiring the government to accelerate the due date within a reasonable time is to prevent the government from frustrating, by failing to make demand, the operation of the statute of limitations. *Nyhus v. Travel Management Corp.,* 466 F.2d 440, 452–53 (D.C.Cir.1972); *Curry,* 679 F.Supp. at 970. The government's delay in this case did not frustrate the operation of the statute. In fact, as the government points out, imposing a narrow time frame in which the government must demand acceleration would impede it in its efforts to work out payments with solvent but financially troubled borrowers. We conclude that the government's demand—made fifteen months after the second default on payment on loans of one to forty years duration—occurred within a reasonable time.

## III. THE BANKRUPTCY STAY

■ Under section 2415(a), the government had 72 months to file its claims and the *Coleman* injunctions extended by 21.5 months the time for filing claims on which time was still running when the injunctions were entered. The government's cause of action on the accelerated installments accrued in April 1981, 102 months before the government filed its claim. Unless, as the government asserts, the 10.5 month stay that went into effect as a result of the Corporation's petition for bankruptcy also tolled the statute of limitations applicable to the government's cause of action against the six individual cosigners, the action is not timely filed.

The filing of a petition for bankruptcy operates as an automatic stay of the commencement or continuation of any action against a bankrupt debtor or against the property of a bankrupt estate. 11 U.S.C. § 362(a). The automatic stay tolls "applicable nonbankruptcy law [that] fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ..." or against the property of the debtor. *Id.* § 108(c); *In re Hunters Run Ltd. Partnership,* 875 F.2d 1425, 1427 (9th Cir.1989). The purpose of the automatic stay provision is two-fold. By halting all collection efforts, "[i]t gives the debtor 'a breathing spell from his creditors'" during which the debtor can try to reorganize. By preventing creditors from pursuing, to the detriment of others, their own remedies against the debtors' property the stay protects creditors. H.R.Rep. No. 595, 95th Cong., 2d Sess. 340, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–6297; *see also* S.Rep. No. 989, 98th Cong.2d Sess. 54–55, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41.

■ No one disputes that the Corporation's petition for bankruptcy stayed the government's action to foreclose on the deed of trust; the real estate conveyed in the deed constitutes property of the estate. 11 U.S.C. § 362(a)(4). Ordinarily, however, unless the assets of the bankrupt estate are at stake, the automatic stay does not extend to actions against parties other than the debtor, such as codebtors and sureties. 2 *Collier on Bankruptcy* ¶ 362.02, at 362–31 to 362–32 (Lawrence P. King, ed., 15th ed. 1992); 8A C.J.S. *Bankruptcy* § 69 (1988 & Supp.1992).[3]

---

3. *E.g., Croyden Assoc. v. Alleco, Inc.,* 969 F.2d 675, 677 (8th Cir.1992) (refusing to extend automatic stay to nonbankrupt codefendants in suit to recover principal and interest on debentures), *cert. denied,* —— U.S. ——, 113 S.Ct. 1251, 122 L.Ed.2d 650 (1993); *Matter of James Wilson Assoc.,* 965 F.2d 160, 168 (7th Cir.1992) (holding that automatic stay does not operate in favor of nonbankrupt codefendants unless bankrupt defendant is an indispensable party); *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194,

1205 (3d Cir.1991) (refusing to extend stay to nonbankrupt codefendant in conversion action); *Matter of Lockard,* 884 F.2d 1171, 1177–79 (9th Cir.1989).

The courts have carved out limited exceptions to this general rule in cases where: (1) "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," *A.H.*

In *Lockard* we ruled that the automatic stay was inapplicable to a creditor's cause of action against a bankrupt contractor's surety. The ruling was grounded on the distinction between the surety bond and the property of the estate:

> [The surety] puts its property directly at risk of liability to creditors in the event of nonpayment by the contractor. [A] fundamental purpose of bankruptcy proceedings is to "throw a blanket of protection on all the property of the debtor." *See* 8 C.J.S. *Bankruptcy* § 140 (1959). In the usual case it is unnecessary, and would be unfair to creditors, similarly to shelter the property of sureties who have undertaken obligations for the benefit of those creditors.

884 F.2d at 1178. The reasoning of *Lockard* is applicable to the present case. When the six individual defendants signed the deed of trust, they assumed the risk of losing their personal property in the event that the Corporation became insolvent. The mere fact that the government's claim against the individual defendants shares a "similar legal and factual nexus" with the government's claim against the Corporation is not sufficient ground for extending the automatic stay. *Croyden*, 969 F.2d at 677 (citing *Maritime Elec. Co.*, 959 F.2d at 1205). Extending the stay to the codebtors would not advance the aims of the bankruptcy scheme: it would neither promote reorganization nor protect the Corporation's other creditors.

The Bankruptcy Code contemplates that creditors will be able to proceed against the guarantors and codebtors notwithstanding the automatic stay. *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir.1988). Sections 502(e) and 509 restrict the right of codebtors and sureties to file claims for reimbursement or contribution against the bankrupt debtor. Under this scheme, a "surety or codebtor is not permitted to compete with the creditor he has assured until the assured party's claim has been paid in full." *Id.* (quoting 124 Cong.Rec. H11,089 (daily ed. 28 Sept.1978) (statement of Rep. Edwards) *reprinted in* 1978 U.S.C.C.A.N. 6436, 6449–50); *see also* S.Rep. No. 989, 98th Cong.2d Sess. 54–55, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41.

The government urges us to extend the stay to the individual codefendants because the government could not have obtained a deficiency judgment against them until after foreclosure, which was precluded during the bankruptcy stay. According to the government, if the stay were limited to actions against the Corporation and its assets, the government would be forced to opt for a direct personal judgment rather than pursuing foreclosure and a deficiency judgment, because the limitations period might expire during the bankruptcy stay. We find this argument unpersuasive; that the effect of section 2415(a) is to place the government in the same position as any other creditor subject to a statute of limitations is not justification for expanding the scope of the automatic stay. The Bankruptcy Code gives creditors a means of obtaining relief when the automatic stay leaves their interests inadequately protected. 11 U.S.C. § 362(d) (Supp.1992). The government availed itself of this mechanism and obtained permission to foreclose on the deed of trust and pursue default remedies.

By the same token, we reject the government's argument that we should apply the stay to codebtors because under Arizona law an action on the notes against the individual codebtors would constitute an election of remedies, precluding the government from proceeding against the corporate property or recovering a deficiency judgment on the

---

*Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Circle K Corp.,* 121 B.R. 257, 259 (Bankr.D.Ariz.1990); *In re Family Health Service,* 105 B.R. 937, 943 (Bankr. C.D.Cal.1989), or (2) extending the stay against codefendants "contributes to the debtor's efforts of rehabilitation." *Matter of S.I. Acquisition,* 817 F.2d 1142, 1147 (5th Cir.1987); *see also In re American Hardwoods,* 885 F.2d 621, 624 (9th Cir.1989) (holding that bankruptcy court had jurisdiction to enjoin action that "could conceivably have any effect" on administration of reorganization plan) (citations omitted). *But see Lockard,* 884 F.2d at 1179. The government has never asserted that its claim against the six individual codefendants falls under one of these exceptions, however, and we decline to so recognize here. *James Wilson Assoc.,* 965 F.2d at 168 (refusing to extend automatic stay where defendant had failed to assert that debtor was indispensable party).

mortgage. Ariz.Rev.Stat.Ann. § 33–722 (1990). In the first place, it is doubtful that section 33–722 would control the government's claims. State law procedures governing property relationships do not apply to federally created property rights when the state procedures do not adequately protect federal interests. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979); *Dupnik v. United States*, 848 F.2d 1476 (9th Cir.1988). Second, as we have already stated, the fact that the government finds itself in the position of an ordinary plaintiff is not a justification for broadening the scope of the automatic stay, particularly in view of the fact that the Bankruptcy Code gives a creditor in the government's position an opportunity to seek relief from the stay.

We conclude that the automatic stay did not toll the limitations period applicable to the government's cause against the six individual defendants and, therefore, the government's action for a deficiency judgment was not timely filed.

**AFFIRMED.**