**UNITED STATES of America, Plaintiff,**

v.

**Ruth G. THORNBURG,
et al., Defendants.**

**No. CV–F–92–5400 DLB.**

United States District Court,
D. California, E.D.

Sept. 7, 1993.

John J. McGarry, Sp. Asst. U.S. Atty., Small Business Administration, Fresno, CA, for plaintiff.

D. Tyler Tharpe, S. Brett Sutton, Kimble, MacMichael & Upton, Fresno, CA, Bruce R. Borad, Borad & Driscoll, Arnold, CA, for defendants.

## DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BECK, United States Magistrate Judge.

On June 10, 1992, Plaintiff filed this complaint alleging breach of a written guaranty contract, requesting judicial foreclosure of a mortgage on real property and a deficiency judgment. In answer, the Defendants raised, as an affirmative defense, expiration of the six year statute of limitations set forth in 28 U.S.C. § 2415(a) [1]. Plaintiff filed the instant motion for summary judgment arguing that, as a matter of law, Plaintiff is entitled to foreclose and collect a deficiency.

## BACKGROUND

On December 15, 1977, Defendant Ruth Thornburg and her now deceased husband Pete, in their corporate capacities as secretary-treasurer and president respectively, executed a promissory note for $500,000.00 on behalf of Thornburg Lumber Company, Inc. and in favor of Pouteau State Bank in Oklahoma. The loan was guarantied by the Small Business Administration ("SBA"). As additional security, the Thornburgs individually executed a written guaranty and a mortgage on California real estate which is the subject property in this action.

In April of 1980, Thornburg Lumber defaulted on the note. As a result, the bank assigned all interest in the note, guaranty and the mortgage to the SBA on December 12, 1980. Defendants contend that in early 1980 the Bank accelerated the note and declared all amounts immediately due and payable and the Defendants began taking steps, with the assistance of the bank and the SBA, to liquidate the lumber company in an attempt to satisfy the indebtedness. Thereafter, no significant action was taken by the SBA until September 23, 1985, when the SBA sent a letter to Mrs. Thornburg requesting all remaining amounts due on the note. On October 14, 1986, Mrs. Thornburg declared Chapter 11 bankruptcy, and the bankruptcy action was dismissed on August 12, 1988. On June 10, 1992, the SBA filed this action for judicial foreclosure and deficiency.

The SBA contends that the amount of the debt owing is $414,284.94 as of April 29, 1993.

Plaintiff asserts it is entitled to summary judgment because the six year statute of limitations set forth in 28 U.S.C. § 2415(a) did not begin to run until September 23, 1985, when it sent the demand letter to Mrs. Thornburg and, because the statute was tolled during the pendency of the bankruptcy proceedings, the filing is timely. Alternatively, Plaintiff contends that even if the statute of limitations under § 2415(a) has expired, the SBA's right to seek foreclosure of the mortgage is not extinguished because § 2415(c) [2] provides that the statute of limitations set forth in § 2415(a) does not apply to "an action to establish the title to, or right of possession of, real or personal property." Plaintiff maintains no statute of limitations applies to bar the foreclosure of a mortgage by the United States and this action is therefore timely. Both California [3] and Oklahoma [4] law provide that mortgages cannot be

---

1. 28 U.S.C. § 2415(a) states, in relevant part, "every action for money damages brought by the United States or an officer or agency thereof which is founded upon a contract express or implied in law or fact, shall be barred unless the complaint if filed within six years after the right of action accrues...."

2. 28 U.S.C. § 2415(c) provides: "Nothing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property."

3. California Civil Code § 2911 provides, in relevant part, "A lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure, either: 1. An action can be brought upon the principal obligation, ...".

4. Oklahoma Statutes, Title 42 § 23 provides: "A lien is extinguished by the mere lapse of the time within which, under the provisions of civil procedure, an action can be brought upon the principal obligation."

enforced if the statute of limitations for enforcement of the underlying debt has expired. Plaintiff argues that the state rule of law is irrelevant as it has often been held that state statutes of limitations are not binding on the federal government.

Defendant contends that because the note and guaranty were accelerated in 1980 when the Bank declared the entire amount of both the note and guaranty immediately due and payable, and because the SBA was assigned the guaranty in December of 1980, and SBA can have no greater interest than the assignor Bank, the Government's six year statute expired prior to the filing of this action. Defendant argues "[s]ection 2415 by its own terms could ... give the Government no more time than remains of six years from the date when the holder of the note could have sued on the note." Furthermore, Defendant maintains that because the statute of limitations has expired, the SBA can no longer foreclose on the mortgage because both California and Oklahoma law provide that the right to foreclose expires with the running of the statute of limitations on the underlying debt. Finally, Defendant argues that even if the mortgage can be foreclosed and/or Plaintiff is entitled to payment on the guaranty, there remains a genuine issue of material fact as to how much is still owed under the note.

## DISCUSSION

■ In a motion for summary judgment, the moving party must establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Federal Rules of Civil Procedure 56; *Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978).

## I. *ACCRUAL DATE*

The Plaintiffs rely on *United States v. Gottlieb*, 948 F.2d 1128 (9th Cir.1991) in support of their argument that the statute of limitations on the guaranty did not begin to accrue until actual demand was made by the Government upon the Defendants. The SBA argues that the formal written demand was not made until September 25, 1985, when a letter was sent to Ruth Thornburg from the SBA. Although the SBA had previously communicated with Defendants and Pouteau State Bank regarding Defendant's non-payment, and assisted in liquidating the lumber business, the September 1985 letter is apparently the first writing by the SBA expressly demanding immediate full payment.

In *Gottlieb*, the SBA brought an action seeking enforcement of a loan guaranty agreement. The Ninth Circuit held that the SBA's cause of action did not accrue when they first purchased the note, but instead when the SBA formally demanded payment. The guaranty at issue in *Gottlieb* provided as follows:

> In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according the terms of said note, the Undersigned, immediately *upon the written demand* of Lender, will pay to Lender the amount due and unpaid by the Debtor.

The identical language is found in the guaranty in this case.

In *Gottlieb* the formal demand came only two weeks after the government received its assignment from the bank. The Court held that the language in the guaranty (as set forth above) provided that the guarantor had no obligation to pay off the loan until the borrower had defaulted *and* a written demand for payment had been made. *Id.* at 1130. Even though the loan and guaranty documents provided waivers of rights to notice and demand, these provisions affected the relationship between the borrower and the lender and did not pertain to direct enforcement of the guaranty.

Over argument by the Defendants that applying this reasoning would unfairly permit the Government to demand full payment at any time without regard to any limitations period, the Court in *Gottlieb* stated that there was no question but that the demand was within in a reasonable time—two weeks. The Court stated that the SBA would be precluded from staving off operation of the statute inordinately by failing to make demand, and noted that when not provided by statute, the time for demand is a reasonable time. *Id.* at 1131. *Citing Nyhus v. Travel*

*Management Corp.,* 466 F.2d 440, 452–453 (D.C.Cir.1972). In *U.S. v. Dos Cabezas Corp,* 995 F.2d 1486 (9th Cir.1993), the Ninth Circuit expanded the definition of "reasonable time" by determining that a fifteen month delay in accelerating the note after initial default was not per se unreasonable.

■ In the present case, if the statute did not begin to run until the September 23, 1985 demand letter was sent to Defendants, then the SBA filed this action within the statute of limitations. (The Bankruptcy petition filed by Mrs. Thornburg tolled the statute of limitations for nearly two years.) However, in contrast to *Gottlieb,* the SBA in the present action was assigned the note and guaranty in 1980 but did not make formal demand until *five years later.* This is an obviously different situation the two weeks which transpired in *Gottlieb* or even the fifteen months in *Dos Cabezas.* Five years could be interpreted to be an unreasonable delay in bringing the action depending upon the circumstances and what occurred since the first default on their note. Defendant alleges that the SBA was involved in the negotiations regarding the liquidation of Defendant's assets from the beginning and the record contains evidence of repeated communications between the bank and the SBA as well as the Defendants regarding liquidation and possible foreclosure. An issue of fact remains regarding whether the SBA's demand was made within a reasonable time after default and Plaintiff's motion for summary judgment as to this issue must be denied.

The discussion does not end here, however, since the SBA argues that even if the statute of limitations set forth in 28 U.S.C. § 2415(a) has expired barring it from proceeding against the Defendants on the guaranty, the right to foreclose on the mortgage securing the guaranty survives, because subsection 2415(c) provides that the limitations period of subsection 2415(a) does not apply to actions regarding right of possession of or title to real or personal property.

## II. ACTION ON THE MORTGAGE

### A. Deficiency Judgment

■ Even if Plaintiff is entitled to foreclosure on the mortgage after expiration of the statute of limitations on the guaranty it is not entitled to collect a deficiency judgment for any amount still owing under the note after foreclosure. *US v. Dos Cabezas Corp.,* 995 F.2d 1486 (9th Cir.1993).

### B. Mortgage Foreclosure

■ Many district courts have held that the federal government may foreclose on a mortgage after the statute of limitations has expired on the underlying debt. However, a review of those opinions, the precedent relied upon by them and the pertinent legislative history persuades me that, in the absence of a federal statute to the contrary, state law regarding the expiration of mortgages should be applied.

#### 1. Other Cases

As noted above, several courts have addressed this same issue and each has found that the Government is not bound by state rules regarding mortgage foreclosures. These decisions, however are not persuasive.

Many of these prior decisions simply state that federal, not state law governs issues involving the rights of the United States arising under nationwide federal programs and therefore the right to foreclose after the passage of the statute of limitations on the underlying debt is controlled by the ancient common law rule that mortgages never outlaw. Many of these decisions rely upon the analysis of the Supreme Court in *US v. Kimbell Foods,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) for the proposition that national programs should not be subject to state statutes. The "general rule" as stated in previous decisions on this question is the United States is not subject to statutes of limitations unless Congress expressly so provides: therefore, state law regarding the extinguishment of liens is irrelevant. *See, e.g. US v. Copper,* 709 F.Supp. 905 (N.D.Iowa 1988) (Iowa law regarding impossibility of mortgage foreclosure if obligation on underlying debt extinguished or barred inapplicable); *United States v. Ward,* 985 F.2d 500 (10th Cir.1993) (Federal law governs issues involving the rights of the United States arising under nationwide federal programs so

federal government not affected by Oklahoma's lien expiration law); *Westnau Land Corp. v. United States*, 785 F.Supp. 41 (E.D.N.Y.1992) (Federal law governs issues involving the rights of the United States arising under nationwide federal programs and because ancient law establishes that United States not subject to a limitations period, federal government not bound by New York's six-year statute of limitations on mortgage foreclosures). As discussed below, this conclusion is supported neither by the legislative history of 28 U.S.C. § 2415 nor by the United States Supreme Court's opinion in *Kimbell Foods*.

2. *Legislative History of 28 U.S.C. § 2415*

Throughout the legislative history surrounding the enactment of § 2415 (the six year statute of limitations on contracts), are expressions that Congress' purpose in enacting the section was in part to assure private litigants of "a more fair and balanced treatment when dealing with the Government." S.Rep. No. 1328, 89th Cong., 2d Sess., [1966] U.S.Code Cong. & Admin.News, ("News") Pages 2502, 2503. The Senate discussed the "salutary effect of requiring litigants to institute suits within a reasonable time of the incident or situation upon which the action is based" emphasizing that the prompt resolution of matters is necessary to an orderly and fair administration of justice. *Id.* The Senate recognized that it is "only right that the law should provide a period of time within which the Government must bring suit on claims just as it now does as to claims of private individuals" in order to reflect modern standards of fairness and equity. *Id.*

The Comptroller General stated "as a matter of fairness, persons dealing with the Government should have some protection against an action by the Government which arose from a transaction occurring many years previously" and therefore recommended adoption of the statute. *Id.*, at 2514. The Senate reiterated that "fairness" was the principal basis for the bill. Finally, the Attorney General of the United States in support of the legislation outlined six reasons for adopting the statute of limitations for actions by the Government set forth in § 2415(a): (1) to "make the position of the Government more nearly equal to that of private litigants"; (2) to "encourag[e], trials at a sufficiently early time so that necessary witnesses and documents are available and memories are still fresh"; (3) "to reduce costs of keeping records and detecting and collecting on Government claims"; (4) to "encourage ... the agencies to refer their claims promptly to the Department of Justice for collection"; (5) "to avoid ... judicial hostility to old claims asserted by the Government"; and (6) to "minimiz[e] ... collection problems arising with respect to debtors who have died, disappeared, or gone bankrupt." News, at 2513.

Plaintiff argues not that the six year statute of limitations is inapplicable to the guaranty agreement but only that, in light of § 2415(c), it does not apply to mortgages which the SBA argues are actions "to establish the title to, or right of possession of, real or personal property".

In adopting § 2415(c) the Senate merely stated:

> Subsection (c) makes it clear that no one can acquire title to *Government property* by adverse possession or other means. This is done by providing that there is no time limit within which the Government must bring actions to establish title to or right of possession of real or personal property of the United States. In other words, there is no statute of limitations applying to Government actions of this type. (Emphasis added)

The legislative history indicates that the overriding purpose of § 2415 was to "level the playing field" and to prevent undue interfere with commercial transactions. This interpretation is buttressed by the plain language used by the Senate. When subsection (c) was adopted, the Senate was most concerned with preventing individuals from acquiring title to *government property* by adverse possession. It is not at all clear that Congress intended to exempt commercial transactions such as loan guaranties which were secured by liens on real or personal property from the six year limitation, especially in view of the fact, as discussed below, that applying state rules regarding the extinguishment of liens does not directly implicate a state statute of limitations. Congress'

overriding concern was to ensure that the federal government did not have an unfair advantage in commercial transactions. This interpretation of the legislative history is in harmony with the general rule, discussed more fully below, that application of a federal rule not unduly disrupt commercial relationships predicated on state law. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 729–730, 99 S.Ct. 1448, 1459, 59 L.Ed.2d 711 (1979); *United States v. Yazell*, 382 U.S. 341, 350–354, 86 S.Ct. 500, 506–507, 15 L.Ed.2d 404 (1966).

### 3. *United States v. Kimbell Foods*

The Supreme Court in *United States v. Kimbell Foods, supra*, directly confronted the question of whether, absent a federal statute, state law governed the priority of liens on personal property in favor of the government (and arising from federal loan programs including SBA loans) or whether the federal liens arising under nationwide federal programs took precedence over private liens. The Court held that the source of law was federal, but that a national rule was unnecessary to protect the federal interests underlying the loan programs. Accordingly, the Court adopted state law as the appropriate federal rule for establishing the relative priority of competing federal and private liens.

In so finding, the Court noted that federal law governs questions involving the rights of the United States arising under nationwide federal programs. *Kimbell*, 440 U.S. at 725–727, 99 S.Ct. at 1457. The statutes authorizing the lending programs at issue in *Kimbell* did not specify the appropriate rule of decision and in no way limited the reach of federal law. In the absence of a federal statute, the federal courts must fill the interstices of federal legislation according to their own standards, either referring to the appropriate state law or applying federal common law. *Id.*

The Court noted "[c]ontroversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules." *Id.*, 440 U.S. at 727–728, 99 S.Ct. at 1458, *citing Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–368, 63 S.Ct. 573,

575, 87 L.Ed. 838 (1943). Before adopting a uniform federal rule, the extent to which application of a federal rule would disrupt commercial relationships predicated on state law must be considered. *Id.*, 440 U.S. at 728–730, 99 S.Ct. at 1459. Although some federal programs "by their nature" require uniform federal laws, if there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision, so long as application of state law would not frustrate specific objectives of the federal programs. *Id.*, 440 U.S. at 727–728, 99 S.Ct. at 1458.

In holding that state laws regarding lien priorities should be applied to the parties in *Kimbell*, the Court discussed in detail the role of the SBA in negotiating loan transactions.

> Incorporating state law to determine the rights of the United States as against private creditors would in no way hinder administration of the SBA and FHA loan programs. . . . Because SBA operations [are] specifically and in great detail adapted to state law the federal interest in supplanting 'important and carefully evolved state arrangements designed to serve multiple purposes' [is] minimal. . . . *Id.*

The Court noted that SBA employees are instructed to follow state law. In fact, as noted by the Court, the SBA Financial Assistance Manual, SOP 50–10 (SBA Manual) indicated that the agency assumes its security interests are controlled to a large extent by the commercial law of each state. The SBA's own operating practices belied an assertion that a federal rule of priority was needed to avoid administrative burdens created by disparate state commercial rules. "By using local lending offices and employees who are familiar with the law of their respective localities, the agencies function effectively without uniform procedures and legal rules." *Kimbell, supra*, 440 U.S. at 732, 99 S.Ct. at 1460.

The Court also emphasized that in structuring financial transactions, businessmen depend on state commercial law to provide the stability essential for reliable evaluation of the risks involved. If a different rule were adopted regarding lien priority for federal

loans, then creditors who justifiably rely on state law to obtain superior liens would have their expectations thwarted whenever a federal contractual security interest suddenly appeared and took precedence. *Kimbell,* 440 U.S. at 738–740, 99 S.Ct. at 1464.

The Supreme Court in *Kimbell* found that although the SBA loan program is a nationwide federal program, it was not a federal program necessitating uniform federal rules, at least regarding loan priority. The same logic employed by the Supreme Court in *Kimbell* regarding lien priority is applicable in the present question of extinguishment of the right to foreclose on a mortgage. The application of state law regarding the foreclosure of mortgages after the underlying debt is extinguished would not frustrate specific objectives of the SBA program. As the Court discussed in *Kimbell,* the SBA closely investigates all loan recipients and requires its agents to be familiar with the commercial law of each state. The SBA is a voluntary lender in each state, and assumedly chooses which security instrument is most likely to protect their interests. *Kimbell,* 440 U.S. at 734–736, 99 S.Ct. at 1462. As in *Kimbell,* application of the state law will not frustrate objectives of the SBA.

Indeed it appears that the adoption of the state law in this regard is consistent with Congress' intent in enacting 28 U.S.C. § 2415. The instant transaction is a commercial loan transaction where the guaranty happened to be secured by a lien on real property. There is no reason to apply a different nationwide rule of law merely because it involves the SBA or because it in-

volves real instead of personal property[5]. Additionally, adoption of the rule of law urged here by the SBA would frustrate the objectives of Congress in enacting the six year statute of limitations. Such a holding would place government agencies on a different footing than private individuals in ordinary business dealings, permit the government to bring actions arising from transactions which occurred many years before, after memories have faded and documents and witness have become unavailable[6]; and discourage government agencies from pursuing debtors in a timely manner.

If the SBA is allowed to foreclose on mortgages securing loans without regard to state laws extinguishing liens, commercial transactions in the state might be greatly disrupted. Contrary to any other lender in the state, the federal government could foreclose on a mortgage at any time regardless of whether the statute of limitations has expired on the underlying debt. This would impair the free alienability of land by maintaining encumbrances which would be extinguished under state law. The SBA should not be subject to rules different than those carefully set forth by the state to ensure certainty in commercial transactions.

Because I find state law does not unduly impact on a valid federal interest or the policies of the SBA, state law regarding extinguishing liens should be adopted as applicable.[7] It is not necessary to determine whether California or Oklahoma law is applicable as both would mandate finding the mortgage at issue extinguished if the statute

**5.** § 2415(c) states that the six year statute of limitations does not apply to "an action to establish the title to, or right of possession of, real or *personal* property" (emphasis added) following the SBA's argument to its logical conclusion would mean that the six year limitations period also does not apply to liens on personal property—a result which would undoubtedly foster confusion in the world of commerce.

**6.** This action is an example of the reasons behind the policy of encouraging actions to be brought early while memories are fresh and witnesses and documents are available. Since the Lumber Company's default, over thirteen years ago, Mr. Thornburg has died and a substantial dispute exists concerning the amounts paid on the loan

and derived through liquidation of the Lumber Company. It would not be surprising to learn that documents and/or witnesses on that issue are now unavailable.

**7.** The Ninth Circuit decision in *United States v. Dos Cabezas,* 995 F.2d 1486 (9th Cir.1993) does not conflict with our decision. The ability to foreclose on a mortgage when recovery on the underlying debt is barred was not at issue in that case. The foreclosure had already occurred and the only issue remaining was whether the SBA could collect a deficiency judgment. The Court in *Dos Cabezas* held that a deficiency judgment was not recoverable because a deficiency was "neither meaningful nor measurable without reference to the underlying debt."

of limitations has expired on the underlying debt.

Because a material issue of fact remains as to whether the SBA's demand under the guaranty was made within a reasonable time after default, it is hereby ORDERED that Plaintiff's motion for summary judgment is DENIED.

IT IS SO ORDERED.